#### FOR THE

## COUNTY OF CHITTENDEN,

### DECEMBER TERM, 1846.

---

PRESENT,

Hon. STEPHEN ROYCE, CHIEF JUDGE.
Hon. MILO L. BENNETT,
Hon. DANIEL KELLOGG, } ASSISTANT JUDGES.
Hon. HILAND HALL,

---

### JEHIEL SMITH *v.* WILLIAM S. HYDE.

While the plaintiff was attending, as a physician, upon the father and mother of the defendant, under a contract with the father, that, " if there was no cure there should be no pay," the defendant executed to the plaintiff a writing, by which he agreed to be " holden " to the plaintiff " for the payment of his bill for medicine and attendance " upon his father and mother. And it was held, that the undertaking of the defendant was collateral, merely, to the contract between his father and the plaintiff.

In such case parol evidence is admissible to prove the terms of the original agreement between the plaintiff and the principal debtor, and to show that the plaintiff has never complied with the terms, so as to acquire a right of action against the principal debtor;—and if this fact be established, the plaintiff can maintain no action upon the guaranty.

If a physician commence attending upon a patient, under a contract that if there is no cure there shall be no pay, he cannot recover for his services, or medicines, unless he show a performance of the terms of the contract upon his part.

If the liability of the defendant is only collateral to that of another person, the action on book account cannot be sustained against him.

Book Account. Judgment to account was rendered in the county court, and an auditor was appointed,—the substance of whose report is sufficiently detailed in the opinion delivered by the court. The county court, September Term, 1845,—Bennett, J., presiding,—rendered judgment *pro forma* upon the report for the defendant. Exceptions by plaintiff.

*J. McM. Shafter* for plaintiff.

*A. Peck* and *H. Leavenworth* for defendant.

The opinion of the court was delivered by

Bennett, J. The plaintiff seeks to recover of the defendant for services rendered and medicine furnished in doctoring the parents of the defendant. From the report of the auditor it appears, that the plaintiff commenced his attendance upon the defendant's father, who had been sick many years, on the second day of December, 1843, under a stipulation between the plaintiff and the patient,—to borrow the language of the report,—"that if there was no cure, then there should be no pay." The defendant was present, when this stipulation, as it is called, was entered into. It seems, that the plaintiff, under this stipulation, continued to attend the father until the sixteenth day of December, making him some four or five visits, without anything being farther said upon the subject. On that day the auditor reports that the plaintiff represented the propriety of having a writing from the defendant, as the father was poor. The son then gave one, of that date, of the following tenor; "I hereby agree, that I will be holden to Doct. J. Smith for the payment of his bill for medicine and attendance upon my father and his wife."

The report finds expressly, that when the plaintiff made his first visit to the defendant's father, the father agreed with him to pay for

the doctoring upon the principle of " *no cure, no pay.*" The declaration of the father, that he would give a cow to be cured, and of the son, that he would give all that he was worth to have his father cured, can be considered as only casual remarks, expressive of the deep interest felt in the matter, and were so regarded by the parties. The auditor has not found, that any special contract was thereby made; and surely none could have been intended. The report finds, that there was not only *no cure*, but that the patient was in fact injured by the treatment of the plaintiff.

The report also finds, that the services charged for doctoring the wife and mother were rendered under a similar agreement and were attended with no beneficial effects.

The plaintiff claims, that the defendant is liable by means of a written contract, and that the auditor erred in the admission of the parol evidence of the character detailed in the report.

The rule of law, that parol evidence is not to be received to control the operation of a written contract, is not to be infringed upon; but in determining this case it is only necessary to inquire what is to be the legal construction of the agreement in question; and the intention of the parties should be our guide in giving it a construction. The plaintiff commenced rendering the services upon the sole responsibility of the father, and at his request, and for his benefit. There is nothing in the case, to show that the father at any time ceased to be liable for any of the services rendered upon the principles of the special contract, " *no cure, no pay.*"  While the plaintiff was professedly rendering the services under the special contract, and the business remained inchoate, the defendant gave the writing in question. The inquiry then arises, how is he to be *holden?*

We think the credit of the defendant came in aid of that of his father, and of course is *collateral* to it. The principle is a common one, that if the *whole credit* is not given to the person who comes in to answer for another, his undertaking is collateral, and, under the statute of frauds, must be in writing. *Leland* v. *Creyon*, 1 McCord 100. 3 Kent 123. The case of *Barber* v. *Fox*, 2 E. C. L. 386, seems to be a full authority for the construction we are disposed to give the writing in question. In that case the plaintiff had been engaged in the transaction of certain business for one Samuel Fox, for doing which Samuel Fox had advanced a given sum of money;

and the plaintiff, in the course of the business, informed him, that the money which he had advanced was nearly exhausted, and that he must have some more, or he could not go on with the business; and thereupon the defendant agreed, if the plaintiff would go on with the business, *he would pay him whatever was to be paid.* Yet this was held to be only an undertaking in aid of that of Samuel Fox. In that case, it is to be remarked, the words of the promise are, *"I will pay whatever is to be paid."* In the case before us the words are, "I agree that I will be holden &c." Certainly the words of the promise, in that case, are more indicative of an absolute and an original undertaking, than in the case at bar.

The obligation of a collateral undertaking being accessory to the obligation of the principal debtor, it is of its very essence, that there should be a valid obligation against the principal debtor. There can be no accessory without a principal; and the accessory obligation must necessarily fall with the principal obligation. The evidence received by the auditor, going directly to show a want of liability on the part of the principal debtor, was properly admitted to defeat a right of recovery on the defendant's collateral undertaking.

As the effect of the agreement is only to render the defendant collaterally liable, the action on book account could in no event be sustained against him.

The judgment of the county court is affirmed.