### JOSEPH J. ELY v. LLOYD WILBUR.

1. The right of a physician to be compensated for his services and medicine does not depend upon the measure of his success in effecting a cure by the means employed, but upon the diligent exercise under his employment of the skill which commonly pertains to his profession.

2. Such services cannot be regarded as other than beneficial; they are so in a legal sense, and the right to adequate compensation arises upon their rendition, wherever fees are otherwise recoverable by suit at law.

---

Error to Mercer Circuit.

For the plaintiff in error, *Mercer Beasley, Jr.*

For the defendant in error, *A. G. Richey.*

The opinion of the court was delivered by

KNAPP, J.   The action was brought to recover reasonable compensation for services as a physician, rendered by the plaintiff to the defendant, at his request.

By the bill of exceptions returned with the record, it is shown that the plaintiff was a practicing physician, and that he had bestowed upon the defendant, personally, professional medical treatment.   The defendant offered evidence tending to show that the plaintiff had mistaken the nature of the defendant's disease, and had, in treating him, prescribed and administered remedies for a disease which he had not.   In the charge to the jury on this phase of the case the Chief Justice instructed them that this insistment of the defendant, even if true, would not prevent a recovery ; that the question was whether the plaintiff exercised proper care and skill as a physician ; that if the jury should conclude that the doctor was mistaken in the nature of the defendant's disease, they must go still farther, and say that a want of care and skill was exhibited.   If no want of care or skill appeared, he was entitled to a fair compensation, although he fell into a mistake.

This charge and instruction to the jury is complained of as error.   But it does not seem to us to be subject to any adverse criticism.   It is entirely in accord with the general rule, as given by all the approved text-writers on the subject, and but asserts the principle often declared by courts of recognized authority.   *Chitty on Cont.* 808, and cases cited in notes.

The rule is general that whenever labor and services are performed at the request of another there is an implied promise raised by the law to pay for such work and services what they are worth ; and the skill and care required in doing the work in order to deserve compensation is that ordinarily possessed and exercised by others in like callings.   *Chitty on Cont.* 796.

Ely v. Wilbur.

The physician, like the attorney, undertakes in the practice of his profession that he is possessed of that degree of knowledge and skill therein which usually pertains to the other members of his profession. And the physician in attending his patients engages that he will use due care to discover the nature of the disease which gives occasion for his services, and in applying the usual remedies. But beyond this measure of skill and diligence the law makes no exaction. If he is to be held for results, or as a guarantor of success, it can be only in virtue of his express engagement. *Smith* v. *Hyde*, 19 *Vt.* 54.

Ordronaux, in his "Jurisprudence of Medicine," states the rule in question clearly. "The physician," he says, "is not a guarantor, without express contract, of the good effects of his treatment, and he only undertakes to do what can ordinarily be done under similar circumstances. If the good effect of his treatment and the consequent value of his services be disputed, he must be prepared to show that his labor was performed with the ordinary skill and in the ordinary way of his profession. This is all the essential evidence upon which to found his case." *Ord. Jur. Med.* 42.

A further citation from the same author is in point: "If a physician ignorantly and unskillfully administer improper medicine, and the patient consequently derives no benefit from his attendance, the physician is not entitled to any remuneration for what he has done. But if he has employed the ordinary degree of skill of his profession, and has applied remedies fitted to the complaint, he is entitled to his hire and reward, although they may have failed in the particular instance." *Id.* 43.

In *Hupe* v. *Phelps*, 2 *Stark.* 480, Chief Justice Abbott, in summing up to the jury, stated the ground upon which a recovery could be had for a physician, as follows: "In case of a regular practitioner, who had used due care and diligence, his claim to remuneration depends not on the question whether he effected a cure; he would be entitled to be paid for his services although he was unsuccessful." See, further,

on this general subject, *McClallen* v. *Adams*, 19 *Pick.* 333 ; *Slater* v. *Baker*, 2 *Wils.* 359 ; *Leighton* v. *Sargent*, 27 *N. H.* 469 ; *S. C.*, 31 *N. H.* 119 ; *Gallagher* v. *Thompson*, *Wright* (*Ohio*) 466 ; *Seare* v. *Prentice*, 8 *East* 348 ; *McCandless* v. *McWha*, 22 *Penna. St.* 261.

It plainly appears, then, that the right of a physician to be compensated for his services and medicine does not depend upon the measure of his success in effecting a cure by the means employed, but upon the diligent exercise, under his employment, of the skill which commonly pertains to his profession. Such services cannot be regarded as other than beneficial. They are so in a legal sense, and the right to adequate compensation arises upon their rendition, wherever his fees are otherwise recoverable by suit at law.

But it is said that this case is not within the rule. For, conceding that failure in results of usual treatment does not disprove beneficial services, the patient is not *treated* for his *disease*. It is argued that if the disease of the patient be mistaken by the doctor, and his treatment be directed under that error, the services could not be meritorious or of value to the patient.

It is to be observed that the bill of exceptions coming with this record gives us none of the evidence taken at the trial, and its statement on argument is entirely aside from the purposes which the writ of error is brought to serve. The bill states only that the suit was for a physician's bill, and the defendant gave evidence tending to show that the plaintiff had mistaken his disease, and treated him for another disease ; that the trial judge instructed the jury that in itself this was an immaterial fact. Its value in the case, in connection with the consideration of skill and care, was stated in a subsequent part of the charge, and was not excepted to.

The plaintiff in error claims the fact of such mistake to be both material and controlling in the case. But it can be so only upon the establishment of a proposition which, I think, has not before been asserted. Directly stated, it is that if, after the exercise of due care and skill to discover the nature

Ely v. Wilbur.

of his patient's disease, however obscure it may be, the physician errs in judgment, and determines inaccurately, and treats for the disease which, to him, appears to be that which afflicts his patient, a right to compensation never arises or is forfeited.

The position, if correct, holds the physician to the duties and obligations of a guarantor in diagnosis. Ordinary skill and care will not suffice; indeed, the highest skill and diligence to which the best ever attain will not fill the measure of duty and requirement, but there must, in this branch of the science of medicine, be absolute certainty in its results, or no merit attaches to the services.

No case asserts the doctrine that such an assumption is implied on his part in virtue of his professional employment. In legal theory, it could only be so on the ground that an error in that branch of the medical art imports the absence of usual skill or care in every case.

It cannot be maintained without direct hostility to the general rule, unless it be true that this branch of medicine is always capable of assured and exact determination in practice, and that the practitioner of customary skill cannot, with proper diligence, fail to distinguish the nature of each disease. There is nothing before us to show, by admission or proof, that such is the fact. We cannot, on any ground known to us, so conjecture.

We are better justified in the inference that cases present themselves to the pathologist, where the aid of the most consummate skill of the practitioner is required in determining the true cause to which to refer observed symptoms, with ground still left for possible error.

There would seem to be no reason, and there is no authority for holding that in the mistakes which the careful and skillful medical practitioner may make in judging upon the true interpretation of symptoms, there is to be found a more serviceable defence to a suit for compensation than can be found in mistakes and failures in the results of treatment.

In all that pertains to the practice of the profession, the physician is subject to the one rule, and that rule was correctly stated in the instructions given to the jury on the trial.

This being the only point presented by the bill of exceptions, it follows that the judgment must be affirmed, with costs.

PATERSON, J. (dissenting). Wilbur brought an action against Ely on a claim for medical services. Payment was disputed because the physician intimated that the patient was afflicted with a disorder unknown to civilized humanity before the discovery of the American continent. Ely contended that a blunder had been made in treating him for that, and swore on the trial he never had such a complaint. No testimony is printed, and it is more difficult, on that account, to reach a satisfactory conclusion. What I can gather from the record sent up here sustains the impression that the practitioner had mistaken the disease. The tenor of the charge to the jury, adverse as it was to the defendant, confirms this idea. Besides, if Ely was, or had been suffering from such a cause, it is more probable he would have been willing to pay liberally to conceal the fact than to run the gauntlet of a jury trial, and, failing there, carry a matter involving such an aspersion on his morality to an appellate tribunal. So I assume, as it seems to me I have a right to do, under the circumstances developed on the face of the record, that the defendant was correct in his allegation of denial. Then it must follow, necessarily, that whatever remuneration the plaintiff was entitled to recover, if any, would depend on the value of the services rendered. What would these be worth in the case under consideration?

On the theory of this opinion, the verdict was contrary to the evidence, very clearly. The defendant was mulcted in a sum of $775, for the mistake of his medical attendant in treating him for one disease, when, in reality, he was laboring under another. The period of service was sixty days only, and the charges continuous in size as well as in time. It is against all reason and justice, as well as law, that Ely should

Ely v. Wilbur.

be compelled to pay nearly $500, with over five years' interest, and a corresponding amount for costs, for no error or fault, no act of omission or commission of his own. How could such services have been worth any such sum to him? The plaintiff should suffer from his own mistake, and I think there was error in instructing the jury to find for him, because it was contrary to the evidence.

In the aspect of the case, as viewed by me, the other errors assigned may be considered under the instruction that it is absurd to say a doctor is not entitled to pay after exercising proper care and skill. To this I cannot subscribe. How can a professional man be declared to have exercised proper skill when he makes a serious mistake in the treatment of a disease? Can it be said that a physician maintains, much less increases his reputation for skill, when he commits an error in judgment, whatever may be his intention? A mistake implies a want of skill, and there can be no proper skill where one is made, even where the symptoms are obscure. There is a risk in all the business of life, and this is one to which a medical practitioner is liable, and must assume. Here is a bill, arising from an error of some kind on the part of the plaintiff, and I fail to see how he can be entitled to any remuneration for the exercise of a proper skill under the circumstances of this case. Besides, if, as Mr. Ely insisted, the real disease under which he suffered was aggravated by the mistaken treatment, there could have been no service of a beneficial nature, and that would preclude any recovery of compensation. Did he exercise proper care in the management of the case? Care, as I understand, is an expression of less import in medical phraseology; but, in the higher signification of the word, is akin to skill. Ordinary care, such as regular attention, good nursing, and, to a certain extent, the application of remedies, though under medical direction, are expenses additional to the regular charges of the physician. In this view, care and skill are included in the claim in the case, and what affects the right to recover remuneration for one, affects equally the other. If forming what doctors call a diagnosis be an element of care,

then the line of distinction between the two is not very perceptible, for both certainly belong to the higher branch of medical science. No imputation is intended to be cast upon the plaintiff for having been negligent or careless in the ordinary acceptation of the latter word. But having made a mistake, or, what is the same thing, the care and skill he exercised having failed to detect the symptoms of the disease, and, by reason thereof, his attendance continuing for a longer time than would have been required under a correct diagnosis, the jury should have been instructed to have taken that fact into consideration. It does seem to me, as I read the record, that the plaintiff should have suffered total loss of remuneration rather than the defendant should have been mulcted in the amount of the verdict. Of the two, the plaintiff was in error at the beginning, and has been throughout. The case is extraordinary every way. The claim was extraordinary, the mistake was extraordinary, the service was extraordinary, the trial was extraordinary, the charge was extraordinary, and the finding the most extraordinary of all. I must dissent to the law laid down as applicable to the facts, and not being able to agree in the conclusion reached by this tribunal, shall vote to reverse the judgment below, and shall place such dissent on record.

*For affirmance*—THE CHANCELLOR, DEPUE, DIXON,. KNAPP, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, McGREGOR, WHITAKER.    11.

*For reversal*—PATERSON.    1.