MITCHELL OLLERT, RESPONDENT, v. FREDERICK W. ZIEBELL, APPELLANT.

Argued March 9, 1921—Decided June 20, 1921.

The non-denial of a statement made in the presence of a party charged with liability for his negligent act, which tends to establish his liability, may amount to the admission of its truth, if it appears that the statement was heard and understood by the party sought to be charged and that he had knowledge of the facts stated; was not physically disabled from answering; had a motive for denying it, and would naturally do so if he does not intend to admit it, and was at liberty to make a reply. Proof of the silence of the party charged, is, under such circumstances, admissible, the inferences to be drawn being left to the jury.

On appeal from the Hudson County Circuit Court.

For the appellant, *James D. Carpenter, Jr.*

For the respondent, *J. Emil Walscheid.*

The opinion of the court was delivered by

BERGEN, J.   This is an action by a husband individually and as administrator *ad prosequendum* of his wife, for injuries caused by defendant's negligence which resulted in her death. The plaintiff recovered a judgment from which the defendant has appealed. The basis of the judgment is that the defendant, a dentist, in treating the teeth of the deceased did it so negligently as to injure the mouth of the deceased from which tetanus set in of which she died. A rule to show cause after verdict was allowed upon the ground that damages were excessive, all exceptions being reserved, which was discharged by the trial court. There was evidence which, if competent and credited by the jury, justify them in finding that when deceased went to the defendant for treatment her mouth was not diseased except that she was suffering from a toothache; that the teeth were treated

by defendant with some disinfectant, and an appointment made for her return a few days later; that she did so and although the defendant's arm was disabled so that he could not do the work he had provided another dentist to do it for him, and was present when the particular treatment complained of was performed; that the night after the treatment, which it is alleged caused the injury, the husband telephoned the defendant that his wife was suffering, and that her mouth was in bad condition; that the defendant and the operating dentist came to plaintiff's house and defendant told him that he had brought a doctor from New York to see his wife; that the husband and the two dentists went to the bedroom of the wife and the husband told her that the defendant had brought a doctor from New York, and the wife replied, "He is not a doctor from New York. He is the man that worked at my mouth. He was drilling on my teeth and I got an awful shock and he left the drill in my mouth, walked across the room, turned off the electric current and came back to me. When he took the drill out of my mouth he said, 'My God, child, what have I done? I did not mean to do that. You must have suffered awful.'" This statement was made to the defendant in response to his questions and in the presence of the other dentist and her husband, and was not at the time denied by the defendant.

The first point made by the appellant is that this statement by the wife, not being under oath, was erroneously admitted because it was a self-serving declaration; immaterial; and in violation of the hearsay rule. This objection is not sound. The statement was made by the wife in the presence of the defendant, at his request, of a matter which if not true was known by the defendant to be false, and which he was then able to deny. The non-denial of a statement made in the presence of the party charged which tends to establish his liability may amount to an admission of its truth, if, as it appears in this case, the statement was heard and understood by the party and he had knowledge of the facts stated; was not physically disabled from answering; had a motive for denying it and would naturally do so if

he does not intend to admit it, and was at liberty to make a reply. When the wife stated in defendant's presence and in reply to his questions that her injury resulted from the use by defendant of an instrument propelled by electricity, and he knew, as he testified, that such a statement was untrue and did not at the time it was made deny it, his silence was admissible evidence from which an admission of its truth may be inferred, the inference to be drawn being left to the jury. *Com.* v. *Kenney,* 12 *Metc.* 235; *State* v. *Laudise,* 86 *N. J. L.* 230; *Wig. Ev.,* § 1071 and notes; *Donnelly* v. *State,* 26 *N. J. L.* 601.

The next point made is that it was error for the court to charge in relation to the foregoing testimony, "This evidence, which if believed, is important evidence in the case, and I simply bring it to your attention because of the importance and the value it has if true upon the cause that is before you for determination, and I say to you that as to it you are to give it just that same careful consideration which I am sure you will give to all the testimony." This was not error for if the evidence was competent the jury should give it the same careful consideration they did to all the testimony.

The third point made is that there was no proof of any act of the defendant from which negligence could properly be inferred. This applies to the refusal to nonsuit, or direct for defendant. The answer is that there was evidence that the woman's mouth was in ordinary condition before it was treated by defendant, and also that after treatment it was in bad condition, indicating that it had been burned by electricity used by defendant, which the appellant argues could not have happened if the testimony on behalf of the defendant was true, but this requires weighing the evidence which this court cannot do.

The fourth point argued is that there was no causal connection between deceased's visit to defendant and her treatment followed by her death from tetanus five weeks later. There is no merit in this because there was evidence which

tended to show that the treatment of her mouth caused the condition which produced the disease which resulted in her death.

The next point is that the court was in error in permitting a witness to testify as an expert when he was not qualified. He was called as an electrical expert, and it appeared that he had been employed by an electric company on the lighting system of automobiles, and being asked whether the machine used by the dentist was so insulated as to prevent the flow of electricity in a dangerous volume, he replied it was not; and also whether its condition was such that an undue electric current could pass through it, to which he answered that it could. We cannot say that a person who was accustomed to deal with electricity as it appears this witness had been, was not a competent expert to express an opinion on the question whether the machine described to him was so insulated as to prevent the flow of an excessive current of electricity. The evidence was ample to justify the trial court in assuming his expert knowledge to be sufficient. There being evidence to support the trial court, we should not reverse its finding.

The next point is that the plaintiff's witness, a physician, was allowed to answer a hypothetical question objected to. The question included facts which had been proven by the plaintiff, although subsequently denied by the defendant, and the objection was based on the ground that it assumed, as proven, facts that the defendant denied although supported by evidence offered by the plaintiff, and also that it did not include all the facts upon which the plaintiff relied. Such questions are usually based on a combination of such facts as the questioner may choose, on the assumption that the jury may accept them. The question need not include all the facts, but may be limited to those the questioner may select to obtain the opinion of the witness on that basis. "The natural conclusion would be that the questioner need not cover in this hypothesis the entire body of the testimony." *Wig. Ev.,* § 682. The question was not objectionable for the reason urged.

The next point is error in allowing a question put to a witness relating to the results of electrical burning. We think the evidence justified the court in permitting this witness to testify as to the appearance of human flesh after electrical burning. He had taken a course in electricity and had been engaged in electrical maintenance work, and was familiar with the effects of electrical burning.

The last point is refusal to charge the defendant's requests. But all these requests are based upon the conclusiveness of the evidence of the defendant, and the assumption that there was no evidence of the defendant's negligence is based upon testimony in contradiction of the proofs of the plaintiff.

Finding no error in this record which justifies reversal, the judgment will be affirmed, with costs.

*For reversal*—None.