ROY S. HULL, Sr., ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF ROY S. HULL, Jr., PLAINTIFF-APPELLANT, v. CLARENCE A. PLUME AND WILLIAM COSTELLO, DEFENDANTS-RESPONDENTS.

Submitted February 11, 1944—Decided April 20, 1944.

For the plaintiff-appellant, *Milford Salny*.

For the defendants-respondents, *William P. Braun*.

The opinion of the court was delivered by

THOMPSON, J. Roy S. Hull, Jr., was seriously injured as a result of an explosion at the plant of the Hercules Powder Company, near Dover, New Jersey, on September 12th, 1940. He was taken to the hospital and died there approximately six months later. He had been attended and treated principally by the defendants, Drs. Plume and Costello, for his injuries, though having also received the attention of other physicians and internes during the period of his stay at the hospital, and the benefit of examination and report by Dr. H. E. Reading, called in on the case at the request of his

family. The connection of the defendant Plume with the case is said to have been limited to the taking of two X-rays in his capacity as a roentgenologist in the hospital, and it is claimed that he did not personally prescribe any treatment, although he saw the patient frequently and consulted with the various doctors and attendants. The defendant Costello appears to have been chiefly in charge of the case throughout.

The claim is that the death of the patient Hull, Jr., notwithstanding the serious nature of the injuries he received in the explosion accident in which over fifty other persons were killed, was actually caused as the result of the negligent treatment of his case by the defendants. The father of the decedent, Roy S. Hull, Sr., as administrator *ad prosequendum*, instituted an action in the Supreme Court in Sussex County to recover damages for the wrongful death of Roy S. Hull, Jr. At the conclusion of the plaintiff's case, the defendants moved for a nonsuit, which was granted by the trial court, and this appeal is from the judgment entered accordingly. The record shows that the court, in dismissing the jury after it had been recalled to the court room subsequent to the argument of the motion, stated that the nonsuit had been granted, "because there was no professional or expert testimony upon the question of negligence."

The plaintiff's appeal is based upon the argument that at the conclusion of the plaintiff's case there was sufficient evidence to warrant the submission of the issues to the jury; that it is not essential, in proving negligence by a physician, that there be testimony by a physician or surgeon that the attending physician or surgeon was negligent or administered improper treatment; that if such expert testimony be essential, it was present in the instant case by virtue of the testimony of the defendant, Dr. Costello, himself, as well as by virtue of certain of the testimony of Dr. Reading; and that if the testimony of Dr. Costello was insufficient, it was so because the court sustained objections to the questions addressed to the doctor for the purpose of eliciting such testimony.

Appellant's decedent was one of many injured in the terrific explosion that took place at the plant of the Powder

Company. The resources of a considerable territory in the area of the plant were called upon to assist in the rendering of aid to the injured. The defendants, Drs. Plume and Costello, were on the staff of the Dover Hospital to which plaintiff's decedent was taken for treatment. The complaint describes the condition of Hull as follows: "He was unconscious for a long period of time, became paralyzed, lost the use of his legs and the ability to perform most of the normal functions of the human body. He was helpless, unable to move. In addition he suffered many other injuries to various parts of the body, all severe and extremely painful." The diagnosis at the hospital on admission was, "General lacerations, particularly a severe laceration of the back in the lumbar area, probable injury to spinal cord and nerve system, as evidenced by diminished sensation and paralysis in both legs, shock, and poor general condition, with a very poor prognosis for continuance of life beyond six months." Subsequent diagnosis as a result of X-ray was, "fractures of the vertebrae with a displacement of one of the lumbar vertebra, and it showed a foreign body in the boy's back." The testimony shows that the patient suffered from many and varied types of injury, externally and internally, the presence of foreign substances within his body, the matter of the removal of one of which was one of the stressed items advanced by the plaintiff in this case, and the condition of the patient was such that, according to the record, the original prognosis indicated poor prospects for life beyond six months; the consulting physician of the family, Dr. Reading, found on January 17th, 1941, that, "A prognosis in this case under any circumstances, as far as life is concerned, appears poor," and the patient did in fact die on March 14th, 1941, within two days of the six months originally predicted as the probable maximum of life.

The crucial question in this case is whether the defendants, as attending and treating physicians, were negligent in the treatment administered, and, if negligent at all, whether such negligence had any causal relation to the death of the patient.

Alluding again to the statement of the trial court that, "There was no professional or expert testimony on the ques-

tion of negligence," the appellant says under Point II of his brief:

"In other words, the court felt bound to adhere to the theory that only physicians can establish what the standards of conduct are with respect to what is or what is not proper medical treatment under given conditions.

*"That this is the general rule announced by the courts is admitted."* (Italics ours.) "But like all general rules it has its exceptions and one of the most generally recognized exceptions is the one applicable here, to wit, that where the acts of the defendant physicians are so manifestly and clearly negligent and improper that they can be recognized as such by the ordinary layman, no expert medical testimony is required."

The general rule, of course, is well established in cases of this type that a physician undertakes in the practice of his profession that he is possessed of that degree of knowledge and skill therein which usually pertains to other members of his profession, and that mere proof of error or mistake is not sufficient to establish negligence. *Ely* v. *Wilbur,* 49 *N. J. L.* 685; *Smith* v. *Corrigan,* 100 *Id.* 267; *Lolli* v. *Gray,* 101 *Id.* 337; *Woody* v. *Keller,* 106 *Id.* 176. In *Woody* v. *Keller, supra,* the opinion delivered for this court by then Mr. Justice Campbell referred to certain testimony of the plaintiff which was of such a nature that if uncontradicted it would tend to show admissions by the defendant physician of mistake in treatment. Nevertheless a nonsuit was sustained, the opinion stating that, "There was no professional or expert testimony upon the question of negligence." In *Zulinsky* v. *Greenblat,* 14 *N. J. Mis. R.* 345; 184 *Atl. Rep.* 806, our Supreme Court said in an opinion by Chief Justice Brogan, with respect to a suit against a dentist, "Whether this defendant used that standard of care which the law requires of him was a matter for expert testimony." In *Coleman* v. *Wilson,* 85 *N. J. L.* 203, it was said in an opinion for this court by Mr. Justice Garrison:

"It was not enough, however, for the plaintiff to satisfy the jury that the tissue removed by the defendant under the suspicion that it was malignant was in fact healthy tissue

that should not have been disturbed; she must go further and show that it was negligence for the defendant to operate for the removal of this tissue without ascertaining its real nature or employing the means at his command to that end by causing a pathological analysis of such tissue to be made before continuing to remove it. *This was largely an expert question.*"

The appellant in his brief states that the precise question, whether expert testimony is requisite to establish medical negligence, does not appear to have been considered in any reported New Jersey cases. However, he cites several of the cases hereinbefore mentioned, which manifestly do consider the question, and, in our opinion, pertinently, though appellant seeks to qualify their import and to regard them as not applicable to the instant case. We believe, on the contrary, that they are indicative of the general trend of authoritative opinion that failure to use the requisite degree of professional skill demanded of the physician or surgeon must ordinarily be established by the expert testimony of those qualified by their own knowledge and experience in the same profession to know and state whether in the given circumstances of a particular case the physician or surgeon had failed to exercise that degree of knowledge and skill which usually pertains to other members of his profession. While we do not here hold that there are no circumstances under which expert testimony may be dispensed with in cases of the type under discussion, we are of the opinion that the nature of the testimony in the instant case was such as to call for expert testimony on the question of treatment of the appellant's decedent by the defendant physicians, as to negligence or otherwise. It was contended by the appellant that the physicians were negligent in "leaving a large piece of metal in a soiled, contused wound for four months and then removing it, and in failing to remove soiled and infectious tissue from the edge of a wound of the size and appearance of the one in question; and in failing to investigate or remedy the presence of urine in an open wound, the same being infectious, the transfusion of blood on only six occasions in four months, on only nine occasions in six months when the treatment required

was repeated transfusions," and that infection of the bloodstream was permitted to develop. The testimony discloses that the physicians were handling a serious and complicated case of multiple injuries. The patient was in extreme shock, resistence was low, bodily strength was at an ebb most of the time, disturbance by operation or manipulation a risky procedure, and the extreme severity of the initial injuries from the beginning was such that physicians recognized ultimate recovery as probably hopeless and that life itself could scarcely last beyond a few months. In this state of facts we are of the opinion that it was not within the province of any jury to adjudge the validity of the judgment and action of the attending physicians as to the course of their treating procedure without at least the aid of experts, qualified as to knowledge in a field outside the knowledge and experience of laymen, and informed of the actual circumstances of the case in question upon which they might deliver their opinion on the basis of either their actual knowledge or assumed facts in a hypothetical question based on the testimony in the case. We conclude, therefore, that the ruling of the trial court as to the necessity of expert testimony, under the circumstances of this case, was correct.

But the appellant argues that if such expert testimony were essential it was present in the testimony of the defendant, Dr. Costello, whom the plaintiff called as his own witness. There is no contention that the defendant was not available to the plaintiff as a witness with respect to any facts within his knowledge and relevant to the case, and the plaintiff did in fact examine him at considerable length as to conditions and actual procedure, but when plaintiff sought to put questions which called for answers outside of the realm of pure fact, i. e., what the physician actually saw and did, and endeavored to elicit from the witness information as to various forms or hypothetical methods of treatment, and to obtain directly or indirectly his own opinion as to such matters, the plaintiff was then invading the realm of expert knowledge and opinion and attempting to make of the witness not a mere relator of facts, but an expert witness on behalf of the plaintiff. Objection was made to questions call-

ing for expert response. The objections were sustained, and, we believe, rightly. The statute *R. S.* 2:97–12 permits the examination of an adverse party as a witness, but provides that, "Except as otherwise provided by law, when any party is called as a witness by the adverse party he shall be subject to the same rules as to examination and cross-examination as other witnesses." One of the established rules as to examination and cross-examination of witnesses is that one may not be called and compelled to give expert testimony unless he shall have voluntarily contracted so to do. This was definitely settled in our decision in *Stanton* v. *Rushmore,* 112 *N. J. L.* 115. There is no authority for excluding the defendant in the instant case from the protection of the statute because he is a party to the litigation, nor do we find any intendment of such exclusion in our decision in *Stanton* v. *Rushmore, supra.* Appellant also intimates that testimony of Dr. Reading with reference to certain procedure of Dr. Costello may be construed as in the nature of expert testimony. But this is not so. Dr. Reading was called and used as a factual witness only and gave no opinion testimony.

In accordance with the foregoing review of the case the judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, PARKER, CASE, BODINE, DONGES, PORTER, COLIE, WELLS, THOMPSON, DILL, JJ. 10.

*For reversal*—THE CHIEF JUSTICE, HEHER, PERSKIE, RAFFERTY, HAGUE, JJ. 5.