### NEWMAN et al. v. ZINN.

#### No. 9376.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 14, 1947.

Decided Nov. 25, 1947.

Edward V. Martino, of Camden, N. J., for appellants.

Carl Kisselman, of Camden, N. J. (Samuel P. Orlando, of Camden, N. J., on the brief), for appellee.

Before ALBERT LEE STEPHENS, GOODRICH, and O'CONNELL, Circuit Judges.

GOODRICH, Circuit Judge.

Charlotte and Charles Newman, the plaintiff-appellants here, brought an action in a New Jersey state court against Charles Zinn, a physician employed by the Radio Corporation of America [1] to operate its medical dispensary, for personal injuries sustained by Charlotte, the wife of Charles. The complaint alleged that the defendant did not use due and proper care or skill in performing a surgical operation on the wife-plaintiff and as a result of such negligence her right foot and ankle were permanently injured. The wife sued for this damage and her husband sued for expenses incurred and the loss of his wife's services as a result thereof. This suit, on the ground of diversity of citizenship, was removed to the federal court. Thereafter, defendant filed a motion for a bill of particulars which was granted. After the plaintiffs' response thereto, the defendant filed his answer in which he denied all allegations of negligence. The case was tried before a jury and at the end of the plaintiffs' case the judge entered a non-suit. The plaintiffs appeal.

All the operative facts have a New Jersey setting. Plaintiff's employment was in the Camden plant of the Radio Corporation of America and it was in the dispensary of this plant where Dr. Zinn treated Mrs. Newman. New Jersey tort law determines the measure of the plaintiffs' right and defendant's obligation and we look to the New Jersey cases except as to matters of procedure governed by the Federal Rules.

We must, of course, at this stage of the case, take the plaintiffs' evidence at its face value, including such favorable inferences as a jury would be entitled to draw from it. The defendant says that there is no evidence from which a verdict for the plaintiffs could be found and emphasizes the point that the plaintiffs' testimony tends to show, if anything, error in diagnosis rather than blunder in treatment. This, says the defendant, is not open to the plaintiffs because the complaint alleged negligence in treatment and the bill of particulars developed the same point.

There are two answers to this contention. One is that diagnosis and treatment are not two separate areas with a boundary line between. The two go hand in hand. When they are together they are part of one problem involving the liability creating conduct with which the defendant is charged. Cf. Rabenovets v. Crossland, 1943, 78 U.S.App.D.C. 54, 137 F.2d 675. A New Jersey decision recognizes that an allegation of negligent treatment does not foreclose an inquiry into negligence in a diagnosis. Young v. Stevens, 1944, 132 N.J.L. 124, 39 A.2d 115.

The second answer is that under the Federal Rules of Civil Procedure, rule 15 (b), 28 U.S.C.A. following section 723c, the plaintiff is not bound by the theory of his pleadings. He may offer his proof and conform his pleadings to the proof offered "when the presentation of the merits of the action will be subserved thereby." In this case our record is silent upon the critical point regarding this question. The plaintiffs offered certain testimony and the defendant objected to it on the ground that it was not within the theory set out in the pleadings. Then the lawyers and the judge retired to the latter's chambers to discuss the matter. The ruling on the record, after they returned, sustained the objection to the testimony. Nothing more appears about an amendment. We think the case one where, if it was deemed necessary to amend, the plaintiffs should have been permitted to do so with a right to the defendant for a con-

---

[1] The corporation was also a defendant below. For reasons not here relevant the suit against it was dismissed and the plaintiffs did not appeal therefrom.

tinuance if the change in the direction of the development subjected him to unfair surprise. This the defendant did not do, but simply objected to the testimony not based upon the theory set out in the complaint and bill of particulars. We think he should have insisted on plaintiffs amending if this objection was to be pressed. Perhaps this was done in conference but whatever was done there does not appear so far as the record in our hands tells the story.

The law of New Jersey concerning the liability of a physician for injuries sustained through unsuccessful treatment does not differ from the general rule prevailing elsewhere. The physician is held to the exercise of the standards of his profession. Ely v. Wilbur, 1887, 49 N.J.L. 685, 10 A. 358, 441, 60 Am.Rep. 668. The plaintiffs in this case offered testimony of an ad-

mitted expert. This type of testimony seems to be required by the New Jersey decisions to establish the failure of the doctor to comply with professional techniques. Hull v. Plume, 1944, 131 N.J.L. 511, 37 A. 2d 53. The plaintiffs' testimony had elicited the fact that the treatment pursued by Dr. Zinn was, in the opinion of the expert, a departure from what the expert regarded as established practice. The plaintiffs then sought to procure further expert information from their physician witness by propounding a series of hypothetical questions. We set them out in full in the margin.[2] Objection was made and sustained to all these questions, which pretty effectively shut off the plaintiffs' expert testimony at this point.

We think that the witness should have been allowed to answer these questions.

---

[2] Question #1.
"Q. Assuming, Doctor, that the plaintiff was injected with procain hydrochloride which is known to the layman as novocain and a pre-operative preparation to serve as an anesthetic before the operation for the removal of a bone or bones, is that the usual and prescribed method of the medical profession before undertaking an operation of that type?"
Question #2.
"Q. Assuming that on February 22, 1946, Mrs. Newman talked with Dr. Zinn and said that she was doing her housework and she had finished her housework that day, and that she had no pain, that she was walking all right, in your opinion, Doctor, was the plaintiff in need of further operative procedure?"
Question #3.
"Q. Doctor, assuming that on February 8, 1946, Dr. Zinn received a report from Dr. Roberts, a qualified roentgenologist the text of which has been read several times and is marked Exhibit P-2, and assuming that she submitted to treatment from February 8 to February 22, and assuming that she was able on February 22, to do her housework, and had no pain, no discomfort, and when her attention was called to her ankle by Dr. Zinn, she told him she saw nothing, in your opinion, Doctor, did the plaintiff require surgical procedure?"
Question #4.
"Q. Assuming, Doctor, that the plaintiff injured her right foot on December 17, 1945, and was examined and X-rayed and subsequently on January 7, 1946, a cast was placed upon her foot which cast remained on her foot during which time

she was given treatment, and on February 5, 1946, that cast was removed and she returned for further treatment between that date, February 5, 1946, and up to February 22, 1946, at which time she told the doctor that she was able to do her housework and had no pain or discomfort, whereupon he said that there were slivers of bone which had to be removed, and whereupon he operated upon her, and during which operation he had her rise from the table, and her foot wrapped in a towel and permitted her to walk with the assistance of two nurses, then took her back to a chair and continued to work upon her, then wrapped her foot again in a towel and had her walk again for the purpose, as he said, of loosening a bone, and subsequently called Dr. Deibert and made an appointment for her to enter the Cooper Hospital on the Monday following, which would be February 22, and at the hospital she was only X-rayed, and on February 26, she was sent home, and after that time she was given baking treatment by Dr. Deibert up until April 5, 1946, and, on April 8, she visited your office, that is, April 8, 1946, and shortly thereafter you prescribed a shoe which she bought at Shapiro's and which shoe she is presently wearing, and she is presently under your treatment and she is presently suffering from some pain and discomfort when she stands any length of time on this right foot. Doctor, in your opinion, is the present condition which exists in the plaintiff's right foot the reasonable and proximate cause of the surgical procedure performed on February 22, 1946?"

They probably would not be selected as models for a student studying the art of trial work. But they did call for expert testimony. The point that they called for testimony relative to diagnosis rather than treatment we have already discussed and need not develop further here. The fact that the questions did not embody all of the testimony is not a sound objection under the New Jersey decisions.[3] And what is admissible under the New Jersey rule is likewise admissible in Federal Court.[4]

We do not, of course, know what the answers to the questions would have been. But if they had been favorable to the plaintiffs they certainly would have helped establish their case and they were entitled to the opinion of their witness if they could get it.

The judgment of the District Court is reversed and the case remanded for further proceedings consistent with this opinion.

---

[3] Ollert v. Ziebell, 1921, 96 N.J.L. 210, 114 A. 356.

[4] Anzano v. Metropolitan Life Insurance Co., 3 Cir., 1941, 118 F.2d 430, 435.