**GLADDEN v. STOCKARD S. S. CO. (ATLANTIC & GULF STEVEDORES, Inc., Third-Party Defendant).**

No. 10126.

United States Court of Appeals
Third Circuit.

Argued May 2, 1950.

Decided Oct. 5, 1950.

508

David Berger, Philadelphia, Pa., for appellant.

Robert Cox, Philadelphia, Pa. (Krusen, Evans & Shaw, Philadelphia, Pa., on the brief), for appellee.

Before MARIS, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

The plaintiff, a resident of Pennsylvania, commenced this diversity action pursuant to the Pennsylvania law[1] against the Stockard Steamship Company ("Stockard"), a New York corporation, to recover damages for the death of her husband, allegedly the result of that company's negligence. Stockard filed a third-party complaint against Atlantic & Gulf Stevedores, Inc. ("Atlantic"), a Pennsylvania corporation, the decedent's employer. In the Court below, the controversy was submitted to a jury, which found in favor of Stockard and against Atlantic. The Court thereupon ordered that judgments be entered for the plaintiff against Atlantic, and in favor of Stockard as against the plaintiff.

This appeal, prosecuted by the plaintiff, is concerned only with the judgment entered in favor of Stockard in her action against it. She contends that there were prejudicial errors contained in the instructions given to the jury, and that the Court erred in a ruling upon a hypothetical question which she sought to put to her expert witness. Accordingly, a new trial as between the plaintiff and Stockard is prayed.

The pleadings and the evidence disclose the following circumstances. On August 25, 1947, the date of the accident involved, Stockard was the charterer in possession and control of the S.S. Herman Melville then at Pier 82, port of Philadelphia, Pennsylvania, and was the employer of her officers and crew. At the time in question, the vessel was being loaded with a cargo of drums of oil by Atlantic. Stockard had made available to Atlantic for use in loading the vessel certain equipment including the winch at No. 5 hold and cables running through a series of blocks to the winch. The winch was operated by an employee of Atlantic, and another of Atlantic's employees gave the signals for raising and lowering to the winch operator. The plaintiff's decedent, also an employee of Atlantic, was engaged in hooking the cables onto the oil drums on the pier. Apparently as a result of a sudden tightening of the cables, when they should have been loosened, the decedent was struck by two oil drums and was knocked off the pier into the Delaware River, where he drowned. Evidently the sudden tightening of the cables was caused by fouling and "backlash" or "backwind" of the cables.

At the trial, the plaintiff was primarily concerned with proving that Stockard had furnished to Atlantic defective equipment or defectively maintained equipment.

1. The Pennsylvania "wrongful death" statute, 12 P.S. §§ 1601–1602, and "survival of actions" statute, 20 P.S. c. 3, App. § 772.

There was evidence that the cables were rusty, dry, and frayed or "sprangled". There was evidence that Stockard undertook to inspect and maintain the equipment which it furnished Atlantic. Stockard, however, took the position that the accident was the result of the incompetence or negligence of Atlantic's employees in the performance of the loading operation, and of Atlantic's failure to provide a safe place to work.

In his charge to the jury, the learned District Judge first stated some general principles, which included a reference to the jury's function, a statement as to the manner of determining damages, and a definition of negligence. He then proceeded to read to the jury various requests for charge submitted by the parties and affirmed by him. We agree with the plaintiff that certain of Stockard's requests so read to the jury were prejudicially erroneous.

■ The jury was instructed that the plaintiff had the burden of proving by a preponderance of the evidence that the "decedent's death was directly caused by negligence on the part of the Defendant." [2] We think it too clear to admit of dispute that the plaintiff need not have shown that Stockard's negligence *directly* caused the decedent's death. Restatement, Torts, Section 431. The importance of the error is highlighted by the fact that in his general charge the District Judge did not discuss the subject of causation. Rather, the requests were read *ad seriatim*, and while some contained statements with respect to proximate cause, the jury, at the very least, was furnished irreconcilable rules of law. The prejudicial effect of the error is magnified by the existence in the case of cross-accusations of negligence between the defendant and the third-party defendant, none of which was necessarily exclusive as to cause. For example, one of the issues presented to the jury related to the use of "savor nets". The jury may well have concluded that Atlantic was negligent in failing to use such nets, and that if they were in place the decedent would not have

fallen into the water and drowned. Thus, even though the jury also concluded that the negligent conduct of Stockard caused the oil drums to strike and injure the decedent and to knock him from the pier, under the above instruction it was permitted to return a verdict in favor of Stockard if it determined that the decedent's death was the direct result of Atlantic's failure to use the safety nets. This, of course, is not the law. Restatement, Torts, Section 452.

■ Furthermore, a number of Stockard's requests failed to recognize the lack of exclusiveness in the countercharges of negligence between itself and Atlantic, and were so cast as to relieve it of liability if the jury should find Atlantic guilty of negligence in certain particulars. Thus, the jury was instructed that it could not hold Stockard responsible for the decedent's death if it found that Atlantic had not furnished him a safe place to work.[3] Obviously, Stockard could have been held liable if the jury believed that it too, was negligent, and such negligence was a substantial factor. The same is true of the charge, that if Atlantic failed to provide safeguards or "savor nets", the jury *must* find in favor of Stockard.[4] Restatement, Torts, Section 452.

It is hardly necessary to dwell longer on this point, for it is evident that the charge as given would have acquitted Stockard of liability as a joint and several tortfeasor. Stockard says that the charge should be read as a whole. The difficulty is not merely that the Court made available to the jury an erroneous rule as to causation, but also that the reading of the requests, as stated, furnished it with specific answers to specific problems without benefit of a general charge, developing the point. The answers were wrong, and since they concerned an integral part of the case, they are prejudicial errors. Language in other of the charged requests which may have given the jury a clue to the correct law did not, in our opinion, effectively neutralize these errors.

**2.** Stockard's request No. 3.

**3.** Stockard's request No. 4.

**4.** Stockard's request No. 7.

Finally, the jury was instructed, in accordance with a request,[5] that its verdict *must* be for Stockard unless "it was reasonable to expect, under the circumstances, that the winch would jam and result in the death of the Plaintiff's decedent." Undoubtedly, the charge is erroneous, for the foreseeability of the exact harm, and even the manner of its occurrence, is not the ultimate criteria of liability. Restatement, Torts, Section 435.

The all inclusive answer of Stockard to these errors is that a verdict should have been directed in its favor for want of evidence of negligence on its part. We cannot agree. Under proper instructions, the jury might well have found that Stockard supplied faulty equipment, or, since there was evidence it undertook to inspect and maintain the equipment, that it was negligent in the performance of its duties, and that such negligence was a substantial factor in bringing about the accident. That cables often foul and "backwind" in the course of use is a factual matter to be weighed by the jury along with the other evidence in the case; it certainly does not warrant removing the controversy from the jury's consideration. Moreover, whatever may be said of De Luca v. Shepard S. S. Co., 2 Cir., 1937, 67 F.2d 437, upon which Stockard relies, it may be distinguished upon the ground that the evidence here showed more than mere dryness of the cable, and indicated as well that Stockard had a duty of inspecting and maintaining the cable.

We hold, therefore, that the plaintiff is entitled to a new trial. However, we do not add as a reason therefor the plaintiff's assertion that she was unduly restricted in the examination of her expert witness by a ruling that a hypothetical question must include all the testimony on both sides. It is not invariably true that a hy-

pothetical question must meet such a rigorous standard, indeed there is wide room for the exercise of judicial discretion, especially in the area of fairness.[6] But in this case, the record does not disclose that the plaintiff inevitably suffered prejudicial harm, for it would appear that her expert's opinion was evidenced through preparatory questions. In any event, the matter may be dealt with anew on re-trial.

For the reasons stated, the judgment of the Court below will be reversed and the cause remanded for further proceedings in accordance herewith.

---

5. Stockard's request No. 16.

6. First National Bank v. Wirebach's Executor, 1884, 106 Pa. 37, 44; Moseley v. Reading Co., 1929, 295 Pa. 342, 348, 145 A. 293; Moyer v. Aetna Life Ins. Co., 3 Cir., 1942, 126 F.2d 141, 144; 2 Wigmore on Evidence (3d Ed. 1940), page 807; and cf. Pierkowskie v. New York Life Ins. Co., 3 Cir., 1945, 147 F.2d 928, 934; Newman v. Zinn, 3 Cir., 1947, 164 F.2d 558, 560–561. The latter two cases also state the federal rule for the admission of evidence: see Rule 43(a), Federal Rules of Civil Procedure, 28 U.S.C.A.