**AYERS v. PARRY et al.**

No. 10436.

United States Court of Appeals
Third Circuit.

Argued June 7, 1951.

Decided Aug. 28, 1951.

Rehearing Denied Dec. 3, 1951.

John E. Toolan, Perth Amboy, N. J..
(Edmund A. Hayes and John T. Keefe,
New Brunswick, N. J., on the brief), for
appellant.

Wm. P. Braun, Newark, N. J., for appellee Parry.

Robert V. Carton, Asbury Park, N. J..
(Durand, Ivins & Carton, Asbury, N. J.,,
on the brief), for appellee Haines.

Before GOODRICH and KALODNER, Circuit Judges, and MARSH, District Judge.

MARSH, District Judge.

This action was instituted against a surgeon and an anesthetist for malpractice. Jurisdiction arises from diversity of citizenship and a claim for damages in excess of the statutory amount. At the conclusion of the evidence presented on behalf of plaintiff the court below entered judgment in favor of the defendants and plaintiff appeals. The question raised by this appeal is whether plaintiff made out a prima facie case. A careful examination of the record convinces us that he did not, and the action of the learned trial judge should be sustained.

■ Since all the operative facts have a New Jersey setting the tort law of that State governs. Newman v. Zinn, 3 Cir., 1947, 164 F.2d 558.

■ Viewing the evidence in the light most favorable to the plaintiff, as we are required to do, Newman v. Zinn, supra, the following appears to be the factual situation. Since February, 1947, plaintiff had been treated for gallstones by Dr. Louis F. Albright of Spring Lake, New Jersey. Within the preceding two years, he had undergone two abdominal operations in which spinal anesthesia was used. On September 20, 1947, plaintiff suffered a severe attack and at 3:15 P.M., was removed to the Fitkin Memorial Hospital in Neptune, New Jersey, to undergo an emergency operation for an obstruction to the common bile duct. Plaintiff was seriously ill. His temperature was 103.6 degrees and he had an acute infection. Dr. Albright engaged the defendant, Dr. O. K. Parry, as the surgeon. The other defendant, Dr. Emerson Haines, chief anesthetist at the hospital, undertook to administer the anesthetic. During the afternoon and evening, morphine and scopolamine were administered at the direction of Dr. Albright. Spinal anesthesia was selected because the doctors were of the opinion that ether would be harmful to this patient's liver. Dr. Haines administered the anesthetic agent through a needle inserted between the second and third lumbar vertebræ. This treatment was started at 9:50 P.M. The operation began at 10:10 P.M. and ended at 1:30 the next morning. During the operation gas, oxygen and ether supplemented the spinal anesthetic. The common duct was located at about 1:00 A.M. whereupon the obstructing stones were removed and the cause of the infection was corrected.

Plaintiff testified that he was placed upon the operating table and assumed a "curled up" position to receive the anesthesia. He stated he "felt this jabbing of pain into my spinal column, and from that point on I had this terrific pain radiating down my [right] leg, such as a heavy electrical shock. I remember striffening out. I remember screaming, and from that point on I fainted and do not know what happened until the next morning in bed." He also said he fainted from the pain. The next morning plaintiff found he could not move his right leg and partial paralysis, marked atrophy, and sensory changes in this leg and in adjacent organs have persisted to the time of trial and probably will be permanent.

Dr. E. A. Rovensteine, an expert anesthetist, hypothesized that if the pain was experienced it was caused by the needle striking the nerve roots. Dr. Denker, a neurologist, testified that a painful reaction to the puncture needle was a "common experience." Dr. Rovensteine further stated that if a patient has pain on the insertion of the needle, followed by stiffening and unconsciousness, the recognized procedure is for the anesthetist to try to determine what caused the unconsciousness and further action would depend on what he learns. As to whether or not defendants should have proceeded with this operation under the circumstances, Dr. Rovensteine was unable to express an opinion.

According to Dr. Denker "this patient suffered an injury to the nerve roots in the lower end of the spinal cord." He said, "The particular region is known as the cauda equina. That is called a cauda equinal neuritis. That condition was produced by the spinal anesthesia. * * * The following nerve roots were injured, on the right side from the eleventh thoracic, all

the lumbars and all the sacrals right down to the fifth sacral nerve root." He further said that the anesthetic agent "had a toxic effect on these nerve roots * * * and that has given him the resultant paralysis, atrophy and sensory changes which are manifest on examination."

On cross examination Dr. Albright agreed that the unfavorable reaction of plaintiff to the administration of the anesthetic was something that could not be predetermined and that it was one of the hazards of this anesthesia. He stated that the anesthetic solution produced a condition called "arachnoiditis, which is an inflammation about the spinal cord * * * that constricts and damages the nerves, * * and which occurs due to some unusual reaction on the part of the patient to that solution."

The parties seem to agree on the principles of law enunciated by the courts of New Jersey as they relate to physicians in the treatment of their patients; they, of course, disagree on their application to the facts.

■■ It is generally held that the physician undertakes in the practice of his profession that he is possessed of that degree of knowledge and skill which usually pertains to the other members of his profession and he has a duty to use that standard of knowledge and skill in treating his patient. Woody v. Keller, 106 N.J.L. 176, 148 A. 624, (E. & A. 1930). One holding himself out as having special knowledge and skill has a duty to exercise the special degree of knowledge and skill possessed by physicians who are specialists in the particular field involved in the light of the present state of scientific knowledge. Cole-

man v. Wilson, 85 N.J.L. 203, 88 A. 1059, (E. & A. 1913).

■ The physician is liable for a failure to exercise the requisite skill or for omitting to exercise the proper care, but without an express contract he is not a guarantor of good results. See Lolli v. Gray, 101 N.J.L. 337, 128 A. 256, (E. & A. 1925).

■ It is presumed that a physician or surgeon exercised the ordinary care and skill required of him in treating his patient. 41 Am.Jur., Physicians and Surgeons § 127; 70 C.J.S., Physicians and Surgeons, § 62a.

■■ The lack of due care, or lack of diligence on the part of a physician in diagnosis, method and manner of treatment ordinarily must be established by expert testimony. Newman v. Zinn, supra; Hull v. Plume, 131 N.J.L. 511, 37 A.2d 53 (E. & A. 1944); Burdge v. Errickson, 132 N.J.L. 377, 40 A.2d 573 (E. & A. 1945); 7 Wigmore on Evidence, 3rd Ed. § 2090; and the alleged negligence must be the proximate cause of the injuries. Medical Jurisprudence, Herzog, § 186.

Occasionally expert testimony is not required where an injury results to a part of the anatomy not being treated or operated upon and is of such character as to warrant the inference of want of care from the testimony of laymen or in the light of the knowledge and experience of the jurors themselves. This situation arises when an ulterior act or omission occurs, the explanation of which does not require scientific opinion. Vergeldt v. Hartzell, infra, footnote 1; and see 70 C.J.S., Physicians and Surgeons, § 62 d(2); 41 Am.Jur. Physicians and Surgeons § 129.[1] But

---

1. For examples see: Vergeldt v. Hartzell, 8 Cir., 1924, 1 F.2d 633 (dentist's drill slipped injuring floor of month); Ales v. Ryan, 1936, 8 Cal.2d 82, 64 P.2d 409 (sponge left in incision); Davis v. Kerr, 1913, 239 Pa. 351, 86 A. 1007, 46 L.R.A.,N.S., 611 (sponge left in abdomen); Evans v. Munro, 83 A. 82 (R.I. 1912) (drain placed in incision and left there); Sellers v. Noah, 1923, 209 Ala. 103, 95 So. 167 (leaving needle in plaintiff's body following appendectomy); Evans v. Roberts, 1915, 172 Iowa 653, 154 N.W. 923 (severe wound inflicted when instrument slipped during adenoid operation); Whetstine v. Moravec, 1940, 228 Iowa 352, 291 N.W. 425 (permitting root of tooth to pass into plaintiff's lung); Ybarra v. Spangard, 1944, 25 Cal. 2d 486, 154 P.2d 687, 162 A.L.R. 1258 (injury of traumatic origin was to shoulder and arm while patient was unconscious; administration of anesthetic agent did not injure nerve roots as is the case sub judice).

where, as here, an injury to healthy tissue within the region of treatment constitutes an occurrence beyond the realm of the knowledge and experience of laymen, the issue of negligence with respect to that injury must be determined by expert testimony.[2]

We think it is beyond dispute that the nerve roots which were damaged in the process of producing anesthesia by injecting the drug into the spinal cord are within the region of treatment and that the cause of this injury to the nerve roots and its effect on the leg and adjacent organs must be explained by experts. When the expert testimony offered by the plaintiff ascribes the cause to the toxic quality of the injected drug as distinguished from the negligence of the anesthetist, that evidence is binding upon the court and the jury would not be permitted to speculate to the contrary.

The gravamen of plaintiff's argument is that Dr. Haines negligently failed to follow the proper procedure in that he injected the anesthetic agent without first determining the cause of plaintiff's unconsciousness and that this was the proximate cause of the injury. It was not proved affirmatively that this defendant failed to ascertain the cause of unconsciousness, but, even if we assume this to be the fact, the causal connection between the omission and the injury was not shown and cannot be inferred. Ewing v. Goode, supra, footnote 2. Since Dr. Rovensteine was unable to render an opinion as to whether the operation should have proceeded or whether it should have been stopped, a matter which clearly calls for expert testimony, it is axiomatic that a jury should not be permitted to hazard a guess.

In his reply brief, plaintiff attempts to remedy lack of proof by invoking the doctrine of res ipsa loquitur. We do not think the doctrine is available to him.[3]

Res ipsa loquitur does not apply in malpractice cases where the injury is one which may occur even though proper care and skill are exercised. From the medical testimony, this seems to be the case sub judice.

The doctrine does not apply where common knowledge or experience is not sufficiently extensive to permit it to be said that the patient's condition would not have existed but for the negligence of the doctors. Here the record is barren of any accident, or ulterior act or omission, which produced the injury such as a "slip" or "awkward thrust" of an instrument, or the injection of a harmful substance into the spinal canal. The painful reaction to the puncture needle is described as a "common experience."

Nor is the doctrine available in a case based upon want of skill in diagnosis, method or manner of treatment. Here, the process of treating the nerve roots by a drug to produce anesthesia in an operation to remove an obstruction to the common duct certainly requires technical knowledge and skill. Because the unfortunate consequences suffered by plaintiff in themselves do not as a matter of common knowledge and experience reveal lack of skill in the anesthetist, scientific opinion is clearly necessary to throw light on the

2. For examples see: Ewing v. Goode, C.C. S.D.Ohio, W.D., 1897, 78 F. 442 (eye removed following operations for cataract); Loudon v. Scott, 1920, 58 Mont. 645, 194 P. 488, 12 A.L.R. 1487, (patient died under anesthetic); Hirsch v. Safian, 1939, 257 App.Div. 212, 12 N.Y.S.2d 568 (twitch developed after operation); Harvey v. Richardson, 1916, 91 Wash. 245, 157 P. 674 (action by physician to recover fee and defendant entered defense that decedent died under anesthetic because surgeon failed to take blood test); Schoen-

ing v. Smith, 1930, 59 N.D. 592, 231 N.W. 278 (paralysis developed after mastoid operation); Ruble v. Busby, 1915, 27 Idaho 486, 149 P. 722 (failure to show that sponge left in abdomen was proximate cause of death); Engelking v. Carlson, 1939, 13 Cal.2d 216, 88 P.2d 695 (cutting nerve during knee operation).

3. See Schoening v. Smith, supra, footnote 2, where it was held that a showing of paralysis of the face immediately after an operation does not establish negligence.

subject.[4] Seldom, indeed, would physicians administer a spinal anesthetic if they are to be held responsible solely for an adverse reaction of the anesthetic on the nerve roots.

In view of the foregoing, we are not required to consider the interesting question of the liability of the surgeon for negligence of the anesthetist.

The judgment will be affirmed.

---

4.  For discussion of the doctrine of res ipsa loquitur in malpractice cases see: 162 A.L.R. 1265; 70 C.J.S., Physicians and Surgeons, § 62, page 991; Medical Jurisprudence, Herzog, § 187.