### CHAPMAN v. FOWLER et al.

(Supreme Court, Appellate Division, First Department. May 7, 1909.)

1. CORPORATIONS (§ 121*)—SALE OF STOCK—CONTRACTS—BREACH—DAMAGES.

Where the seller of corporate stock failed for nearly a month to deliver the stock, though the buyer had paid the price and demanded performance and notified the seller that the stock was declining and that he desired delivery in order to realize on the transaction, the buyer was entitled to recover the damages resulting from the depreciation of the stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 505; Dec. Dig. § 121.*]

2. CORPORATIONS (§ 121*)—SALE OF STOCK—BREACH OF CONTRACT—DAMAGES—"WAIVER."

A buyer paying for corporate stock and then accepting a delivery thereof subsequent to the date fixed for delivery, notwithstanding the depreciation in its market value, does not thereby waive his right to recover the damages sustained for the refusal to deliver on the designated date; a "waiver" being the relinquishment of a known right and implying an election to dispense with something of value or some advantage which the party might at its option insist on.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 121.*

For other definitions, see Words and Phrases, vol. 8, pp. 7375–7381; 7831–7832.]

3. CORPORATIONS (§ 121*)—SALE OF STOCK—BREACH OF CONTRACT—ESTOPPEL.

A buyer of corporate stock paying the price and then accepting a delivery subsequent to the date fixed for delivery, notwithstanding the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

depreciation in its value, and notwithstanding a demand for performance at the time designated, does not thereby estop himself from recovering the damages sustained; there being nothing to show that the seller lost any rights in consequence of the buyer accepting the stock.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 121.*]

Appeal from Trial Term, New York County.

Action by Melville D. Chapman against Emily Fowler and others, executors of Anderson Fowler, deceased. From a judgment of dismissal, entered at the close of plaintiff's case, he appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, LAUGHLIN, and CLARKE, JJ.

Wing, Russell & Waterson (Burt D. Whedon, of counsel), for appellant.

Richard B. Kelly (Henry B. Twombly, of counsel, and Louis H Hall, on the brief), for respondents.

CLARKE, J. The complaint alleged: That on or about November 25, 1905, the plaintiff and Anderson Fowler, deceased, entered into an agreement that the said Fowler should forthwith sell to the plaintiff 1,000 shares of the common capital stock of the Greene Gold Silver Company, for which the plaintiff was to pay $2,250; the said stock to be transferred on the books of the company and delivered to the plaintiff by the said Fowler on March 15, 1906; that on November 25, 1905, plaintiff paid to said Fowler said sum of $2,250 in full of the purchase price; that thereafter on February 9, 1906, said Fowler died, leaving a last will and testament whereby the defendants were appointed executors, which was duly probated on March 13, 1906, and on said date letters testamentary were duly issued to the defendants, who duly qualified; that in violation of said agreement the said stock was not transferred on the books of the company on March 15, 1906, nor was the same transferred until some time thereafter, at which time the said stock had materially depreciated in value, to the damage of the plaintiff; that the plaintiff on March 15, 1906, duly demanded the delivery of said 1,000 shares of stock, but the same was refused.

Upon the trial the plaintiff testified: That on the 15th of March, he asked one of the executors for the delivery of 1,000 shares under his father's contract. "He told me that the affairs of his father's estate were in such shape that he could not make a delivery on that day, and he did not know when it could be made. I said, 'the stock is declining, and I want to make a sale and get out of it and realize on my transaction.' 'Well,' he said, 'I cannot help you out. You will have to wait until we clean up a lot of affairs and until we get to it.'" It was proved that delivery was made on the 12th of April, and that plaintiff made no objection to receiving the stock when it was delivered. It was proved that the stock was transferred on the books of the company on April 10, 1906, and that the difference between the highest price of 1,000 shares of the stock on March 15, 1906, and the lowest

price on April 10, 1906, was $1,500. At the close of the plaintiff's case, defendants moved to dismiss the complaint, and the learned court said:

"It seems to me that having received the stock without protest and without objection, and having retained it ever since, it is not a waiver, but becomes an estoppel. I will grant the motion to dismiss the complaint."

The plaintiff paid full price for the stock to be transferred upon the books of the company and delivered to him upon a fixed future day. There was a breach of said contract, in that upon said day the stock was not transferred to his name upon the books of the company, and upon demand with notice that he desired delivery because the stock was declining, and he wanted to make a sale and realize on the transaction, defendants failed to cause the transfer to be made and failed to deliver until nearly a month thereafter; the value of the stock having very considerably depreciated in the meanwhile. It would seem that the plaintiff had established the essential ingredients of a cause of action, a valid contract upon sufficient consideration, a breach upon demand, and resulting damage, with notice to the defendants of the condition of the market and that a failure to deliver would cause damage.

We are unable to perceive in what way the subsequent acceptance of the stock operated as an estoppel. The plaintiff had the absolute right to the stock. He had paid for it in full and it belonged to him. It was to be delivered upon a day certain. If not delivered, he would have been entitled to the full value thereof by way of damages.

In Ripley v. Ætna Life Insurance Co., 30 N. Y. 136, 86 Am. Dec. 362, the court said:

"It seems to me that a waiver to be operative must be supported by an agreement founded on a valuable consideration, or the act relied on as a waiver must be such as to estop a party from insisting on the performance of the contract or forfeiture of the condition."

In Stenton v. Jerome, 54 N. Y. 480, the court said:

"It is a principle as old as the common law that a cause of action once vested can only be discharged by a release under seal, or the receipt of something in satisfaction"—citing McKnight v. Dunlop, 5 N. Y. 537, 55 Am. Dec. 370.

In New York Rubber Company v. Rothery, 107 N. Y. 310, 14 N. E. 269, 1 Am. St. Rep. 822, Judge Peckham defines an "estoppel" as follows:

"To constitute it, the person sought to be estopped must do such act or make such admission, with the intention of influencing the conduct of another, or that he had reason to believe would influence his conduct, and which act or admission is inconsistent with the claim he now proposes to make. The other party too must have acted upon the strength of such admission or conduct."

And in Clark v. West, 193 N. Y. 349, 86 N. E. 1, the court said:

"We assume that no waiver could be implied from the defendant's mere acceptance of the books and his payment of the sum of $2 per page without objection. It was the defendant's duty to pay that amount in any event after acceptance of the work. The plaintiff must stand upon his allegation of an express waiver, and, if he fails to establish that, he cannot maintain his action. * * * A 'waiver' has been defined to be the essential relinquish-

ment of a known right. It is voluntary, and implies an election to dispense with something of value, or forego some advantage which the party waiving it might, at its option, have demanded or insisted upon. * * * The law of waiver seems to be a technical doctrine introduced and applied by the court for the purpose of defeating forfeitures. * * * The doctrine of equitable estoppel or estoppel in pais is that a party may be precluded by his acts and conduct from asserting a right to the detriment of another party who, entitled to rely on such conduct, has acted upon it."

There is no pretense in the case at bar that the defendants had any rights which were lost or affected to their detriment by the act of the plaintiff in accepting the stock which clearly belonged to him, or that they were induced to make said delivery by any promises or representations of his. He merely received his own property when defendants got ready to perform their father's contract. The damages which he might otherwise have recovered, based upon their refusal to deliver, were mitigated but not wiped out. He had a right of action for damages for breach of contract. He did not waive that right, and he did nothing to estop himself from asserting that right.

The judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.