BESSIE R. BLACKBURN, Respondent, v. DAVIS BAKER, Appellant.

Third Department, November 20, 1929.

*Lloyd Paul Stryker* [*Harold Shapero* of counsel], for the appellant.

*Leary & Fullerton* [*James A. Leary* of counsel], for the respondent.

HILL, J. Defendant is a physician. Plaintiff has recovered for malpractice. A small piece of gauze, with a metal snap attached, called a pack-off, was left in plaintiff's abdomen at the close of an operation performed by the defendant. His connection with the case began when he was called in consultation and found the plaintiff suffering from some acute abdominal condition, which he diagnosed as a ruptured Fallopian tube caused by an extra-uterine pregnancy, or acute appendicitis. At two-thirty o'clock in the morning he directed her removal to a hospital, and the operation was performed shortly after five. The operating room was prepared by two nurses in the employ of the hospital. They took there, because of the doctor's diagnosis, two sizes of pack-offs, one about seven feet long and six inches wide, with a small metal snap attached. This size was used if the incision in the abdomen was large and the hemorrhage profuse, as would be expected if a Fallopian tube was ruptured. The smaller pack-off was about fifteen inches long and three inches wide, also with a snap attached. It was the size ordinarily used in appendix operations. When the incision was made, it disclosed a ruptured tube, accompanied by extreme hemorrhage. It was the duty of one of the nurses to saturate the pack-offs in a saline solution and hand them to the defendant when requested. A count was kept by the defendant and by one of the nurses of the pack-offs placed in the abdomen, and at the conclusion of the operation it appeared that all had been removed. Defendant and his assistant made a manual examination of the abdominal cavity before it was closed. They found no foreign substance. Some months later, one of the small pack-offs was located by an X-ray, and a second operation performed to remove it. So far as the defendant, his assistant or the nurses knew, none of the small pack-offs were used in the operation. The fact that one was found in the abdomen later can be explained only upon the assumption that it was concealed in the folds of one of the larger size and escaped the attention of the nurse and the defendant.

Plaintiff's theory was that the leaving of the pack-off in the abdomen made the lack of skill and want of care so obvious that expert testimony was unnecessary. But defendant called an expert who said that proper and approved methods were used in

the operation, and thus inferentially that there was no negligence. He stated that it would have been unwise for defendant to have made a more extensive search for foreign substances in the abdominal cavity at the close of the operation, and might have caused paralysis of the intestines; also that it was proper and customary for an operating surgeon to rely on the nurse's count of sponges, pack-offs and gauze placed in and removed from the incision. Plaintiff did not rebut defendant's medical evidence that proper and approved methods were used. The presence of the pack-off in the abdomen after the first operation standing by itself suggested that proper care had not been used, and required defendant to offer proof in explanation. But when defendant's expert witness stated that proper and approved methods were used in the operation, the possible inference of negligence because the pack-off had been left in the abdomen was destroyed.

In *Benson* v. *Dean* (232 N. Y. 53) a surgeon broke a needle while closing an incision. The plaintiff there sought to establish his case without medical evidence, contending that the want of care was so obvious that expert testimony was unnecessary. Judge POUND says in the opinion, in discussing this feature of the case (p. 57): " The court instructed the jury over defendant's exception that the mere breaking of the needle alone was not necessarily negligence, but might be some evidence of negligence. The plaintiff failed to offer any evidence to rebut defendant's evidence that surgical needles occasionally break, even when the operator uses the highest degree of skill and care. The evidence of the first operation coupled with the presence of the broken needle in the abscess standing by itself might have suggested that proper care had not been taken and might have been enough to put defendant to his proof. (*Goldstein* v. *Pullman Co.*, 220 N. Y. 549, 554.) Common sense suggests that the condition discovered by Dr. Saphir was incompatible with successful surgery and medical treatment. But when the evidence of the defendant's surgeons came into the case with a reasonable explanation showing what may happen when the proper degree of care and skill is actually exercised, the possible inference of negligence from the breaking of the needle alone was driven out and the jury should have been so instructed. The rule *res ipsa loquitur* put upon the defendant the burden of going on with the case (*Davis* v. *Kerr*, 239 Penn. St. 351), but in the absence of medical evidence to the contrary, it must be assumed on this appeal that the breaking of the needle was not due to negligence."

This defendant was not chargeable with the negligence, if any, of the nurses employed by the hospital. (*Baker* v. *Wentworth*, 155 Mass. 338.)

The verdict was against the weight of evidence. (*Pike* v. *Honsinger*, 155 N. Y. 201; *Alteresko* v. *Phillips*, 208 App. Div. 171; *Robbins* v. *Nathan*, 189 id. 827; *Brown* v. *Goffe*, 140 id. 353; *Winner* v. *Lathrop*, 67 Hun, 511.) The judgment should be reversed upon the law and facts and a new trial granted, with costs to abide the event.

Van Kirk, P. J., and Hinman, J., concur; Hasbrouck, J., concurs in result; Whitmyer, J., dissents and votes for affirmance.

Judgment and order reversed on the law and facts and new trial granted, with costs to the appellant to abide the event.