GEORGE W. BERRY, JR., Respondent, *v.* THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., and DELIA F. WHITE, as Administratrix, etc., of JOHN T. WHITE, Deceased, Appellants, Impleaded with THE DELAWARE & HUDSON RAILROAD CORPORATION, Defendant.

Third Department, June 22, 1938.

*Patrick J. Tierney*, for the appellant The Employers' Liability Assurance Corporation, Ltd.

*William O'Brien* [*James J. McNaughton* of counsel], for the appellant Delia F. White, as administratrix.

*F. Claude O'Connell*, for the respondent.

CRAPSER, J.   This is an appeal by the defendants, The Employers' Liability Assurance Corporation, Ltd., and Delia F. White, as administratrix of the goods, chattels and credits of John T. White, from a judgment against them upon the verdict of a jury for the sum of $20,000 and an order denying a motion to set aside the verdict and for a new trial.

The action was brought by the plaintiff against these appellants and the Delaware & Hudson Railroad Corporation to recover damages for personal injuries received by the plaintiff as the result of a collision between an automobile owned by the defendant, The Employers' Liability Assurance Corporation, Ltd., and driven by John T. White, deceased, an employee of said corporation, and a train operated by the defendant, The Delaware & Hudson Railroad Corporation, at a private railway crossing near Plattsburg, N. Y.

At the close of the plaintiff's and defendants' case the trial court granted the motion of the defendant, The Delaware & Hudson Railroad Corporation, to dismiss the complaint as against it.

The jury found a verdict against the appellants in the sum of $20,000 upon which judgment was entered.

Upon the case in this court the defendants have appealed from the judgment and from the order denying the motion to set aside the verdict and for a new trial.

The complaint among other things alleged: " On the 20th day of October, 1936, at about 1:00 o'clock A. M. the defendant, The Employers' Liability Assurance Corporation, Ltd., was the owner of a certain automobile, which at said time was being operated by the late John White, with the express or implied permission of the defendant, The Employers' Liability Assurance Corporation, Ltd."

The answer of that corporation admits that on October 20, 1936, said defendant was the owner of a certain automobile but denies that it was being operated by John White with their expressed or implied permission.

The plaintiff was the claim manager of the American Mutual Liability Insurance Company and had been such claim manager since June, 1930, and before then he had been an adjuster and investigator of claims for that company and other companies for thirteen years.   In the performance of his duties he had investigated hundreds of claims made by people for damages who were

injured in automobile accidents and was familiar with the facts necessary to be proven in negligence actions.

The accident happened at about two o'clock in the morning of October 20, 1936. On the day of the accident the plaintiff left Albany and went north to attend compensation hearings and make investigations. He arrived at Plattsburg at about ten o'clock in the evening. In the Cumberland Hotel he met the deceased, John T. White, Dr. Baldwin, a doctor employed in the Department of Labor; and at about eleven o'clock he went with them in an automobile of The Employers' Liability Assurance Corporation, Ltd., to a resort known as the Brookside, five or six miles from the city. The deceased, White, drove the car. They went up to see a floor show. Meals and liquor were being sold there. They saw the floor show and stayed at the Brookside until about one-ten A. M. when they went back to Plattsburg. It was about one-thirty or one-forty-five in the morning when they arrived at the Cumberland Hotel. Dr. Baldwin left them at the Cumberland Hotel and Berry and White went to the lavatory and then got into the automobile and with White driving went south from Plattsburg eight, nine or ten miles, and came to a yard and drove into a driveway and drove right near a house and White got out and knocked at the front of the house and a light came on and a man came to the door and they talked for a minute and Mr. White went inside and stayed ten or fifteen minutes and then went back to the car and turned around and drove out of the yard and headed back towards Plattsburg and a short distance outside of Plattsburg they made a right-hand turn into a dirt road and drove in 300 or 400 feet. They came to a private railroad crossing and went up a grade across the railroad tracks and down a steep grade on the other side where the lights of the car played on Lake Champlain.

Mr. White backed his car up towards the north and came around and started up the incline again to go back over the track. The plaintiff heard a rumble and looked through the window on the right and saw a train coming. He called it to the attention of the driver and tried to get out of the car but the speed of the car was increased and went across the first track into the path of the oncoming train when the accident happened. The car was going about twenty miles an hour. The car was driven directly in front of the train and the plaintiff suffered the injuries for which he began this action. The driver of the car was badly injured and died a day or two later. The car was demolished.

The respondent in his brief says that it was not the contention of the plaintiff upon the trial and it is not now his contention and never has been his contention that the deceased, White, was

engaged in the business of his company during the evening of October nineteenth, when he was in various parts of the Cumberland Hotel, or at the Brookside or on his way back to the hotel where he let Dr. Baldwin out. Plaintiff's contention has been and still is that the ownership of the automobile operated by the deceased at the time of the accident was admitted by the appellant corporation in its pleadings and that admission, under the law, created the presumption that at the time of the occurrence of the accident the car was being operated by White for the benefit of his employer.

Evidently the respondent tried the case upon the theory that the ownership of the automobile having been admitted, the presumption that it was being operated by the employee, White, in the interest of the company followed as a natural course and that the respondent admits that it is not his contention that White was engaged in the business of the company on the evening of the accident until after he let Dr. Baldwin out at the Hotel Cumberland about one o'clock but that from then on the car being operated by White and the ownership being admitted that a presumption attached and that due to the fact, as the respondent claims, that there was no substantial evidence to the contrary, the presumption created made a case for the jury.

Motions were made at the end of the plaintiff's case and again at the end of the defendants' case, by both the defendants, to dismiss the complaint, which motions were denied and the matter was submitted to the jury.

The defendant, The Employers' Liability Assurance Corporation, Ltd., produced witnesses to show that at six o'clock the deceased, the driver of the car, White, was drinking in the Cumberland Hotel with John O'Connell, a young lawyer in Plattsburg, who was a friend of his; that on two occasions during the evening he contacted Margaret Keeler, who conducted the cigar stand and news stand in the hotel, and tried to get her to go out on dates with him, which she refused to do.

Dr. Baldwin, a compensation doctor, had dinner with White at about six o'clock, and at eight or nine o'clock had cocktails in White's room with him and later on went to the Brookside in Mr. White's car, together with the plaintiff in this action, to see a floor show. They stayed at the Brookside until the show was over and while there they drank some beer and then went back to the Cumberland Hotel.

Around ten-thirty White bought a drink in the barroom for Mr. Keeler and had some drinks himself and he had had some drinks before that in the barroom.

White, while employed by the company, had asked to use the car assigned to him for his duties to go on personal trips with and had been refused. He filled out a traveling expense report each week upon a form which was offered in evidence. He had been instructed by his direct superiors that the car could not be used for anything except the business of the company and could not be used for any personal trips, and upon the travel expense report which he filled out each week for some two years there was printed " Automobiles owned by The Employers' Group shall be used only for Company business. * * * Employees entrusted with Company cars will be held responsible for any damage that may be done to the cars in their charge if they are involved in an accident, unless the circumstances surrounding the accident are such that the employee was clearly not at fault." White filed one of these every week and filled out one the Saturday before the accident. His attention was specifically called to the instructions on the back of the expense report in February of 1935 and at other times. Each time that White had requested to use the car in his own personal business he had been refused.

The side road into which they turned was about 400 feet long before reaching the railroad track, and was owned by Katherine Howard, who lived across the tracks. There were some cottages over there owned by her and a pumping station owned by the city of Plattsburg and one other cottage. The cottages were all closed. It was a private roadway and people paid her for going over it and she kept it in repair. There was a sign reading, " Private R. R. Crossing."

Mr. White's superintendent had a conversation with him in the hospital the morning after the accident in which Mr. White said to him, "'I suppose I will lose my job on the head of this," and asked, " How badly is the car damaged? "

The respondent relies upon the case of *Ferris* v. *Sterling* (214 N. Y. 249). In that case the defendant's son while in charge of an automobile ran down a motorcycle and killed a man. Both father and son asserted that the car was the son's, and that he was using it for his own pleasure and not in the father's business. The license, accident and fire insurance policies, however, were made out in the father's name. It was claimed by the defendants in that case that the father had given the car to the son as a birthday present but that the registration and insurance policies had not been changed. The court held that the insurance policies and registration were *prima facie* proof that the father was the owner and that it was engaged in the owner's service. Under the provisions of the Vehicle and Traffic Law this presumption was not

destroyed simply by the testimony of the defendant but testimony of that sort may be a question for the jury.

Judge McLaughlin, writing in *Potts* v. *Pardee* (220 N. Y. 431), held:

" While ownership of an automobile is *prima facie* evidence of the owner's responsibility for an accident caused by the driver's negligence, this presumption disappears in the face of substantial evidence that he was not in the owner's employ at that time. * * *

" The presumption growing out of a *prima facie* case, however, remains only so long as there is no substantial evidence to the contrary. When that is offered the presumption disappears, and unless met by further proof there is nothing to justify a finding based solely upon it."

Section 59 of the Vehicle and Traffic Law provides that the owner of a motor vehicle operated upon a public highway shall be liable and responsible for death or injuries to persons or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, expressed or implied, of such owner.

Section 2 of the Vehicle and Traffic Law provides: " 'Public highway' shall include any highway, road, street, avenue, alley, public place, public driveway or any other public way."

The driveway on which this accident happened was a private way; it was not a public way; persons paid for using it. White had no business down there; there was nobody down there for him to see and he made no attempt to see any one. He drove across the railroad tracks, turned his car around and drove back, when the accident happened. It was two o'clock in the morning. This, coupled with the history produced by the defendant of White's wanderings during the previous evening for his own pleasure, his attempts to date the girl in the hotel, and the concession in the respondent's brief that White was engaged upon his own business until the time when he got back to the hotel, is clearly sufficient under the holding in the *Potts* v. *Pardee* case to overcome the presumption created by section 59 of the Vehicle and Traffic Law.

The entire evidence introduced in the case shows that the deceased, John T. White, was not engaged in the scope of his employment for the defendant at the time of the accident.

The motion made by the defendant, The Employers' Liability Assurance Corporation, Ltd., at the end of the case, for the dismissal of the complaint should have been granted. The order and judgment appealed from should be reversed as against The Employers' Liability Assurance Corporation, Ltd., and the complaint dismissed as against it, with costs.

The judgment against Delia F. White, as administratrix of the goods, chattels and credits of John T. White, deceased, should be affirmed, with costs.

HILL, P. J., and HEFFERNAN, J., concur; RHODES, J., concurs for affirmance as against the defendant White, and as to reversal of the judgment against The Employers' Liability Assurance Corporation, Ltd., on the facts, but dissents as to the dismissal of the complaint, and votes to grant a new trial. (See *Blackburn* v. *Baker*, 227 App. Div. 588.) BLISS, J., dissents, with an opinion.

BLISS, J. (dissenting). The majority here propose to reverse the judgment rendered against the appellant Employers' Liability Assurance Corporation, Ltd., upon a jury's verdict and to dismiss the complaint as to such appellant. In our consideration of the case we start with a *prima facie* cause of action against the insurance company based upon its ownership of the car, which even direct contradictory evidence will not destroy but will create a question of fact for the jury. (*Ferris* v. *Sterling*, 214 N. Y. 249.) How then may the complaint be dismissed as to this appellant? We are told that the entire evidence shows that White, the deceased employee and driver, was not engaged in his employment for the defendant at the time of the accident. There is no direct evidence to support this holding. Practically all there is here to contradict the *prima facie* case is the inherent improbability of an adjuster being engaged on company business at two o'clock in the morning following an evening of diversion. White's immediate superior testified that neither he nor any one else in the company knew whether White was on company business when the accident happened, that an adjuster's hours were when his work was finished and that this might be at two o'clock in the morning if necessary. It was conceded that White had been on pleasure bent during the early evening. But the fatal journey was not to another place of entertainment. Rather it was to a private home where White went in alone while his companion Berry stayed in the car. More important still, the employer, which knew the business necessities of the trip and cases which White was then working on, failed to show those necessities and cases or that no such side trip was required. On a prior occasion when Berry had gone on a business trip with White, the latter called on a doctor late at night so that White's employment sometimes necessitated late hours and such nocturnal visits were not uncommon. The defense is far too weak to warrant a conclusion as a matter of law that White was acting outside the scope of his employment.

There was also proof here of frequent deviations by this company's employees from the strict rule as printed on the weekly expense report, all with the knowledge and tacit approval of the company. " Deviation by an employee from the strict line of his employer's business or from his directions may not put the employee's act outside of the scope of his employment; so deviation even from the terms of permission to use the car might conceivably be insufficient, of its own force, to terminate the permission and render the use of the car illegal." (LEHMAN, J. in *Chaika* v. *Vandenberg*, 252 N. Y. 101, 106.) The presumption which flows from ownership disappears only where upon all the evidence it appears that no permission to use the car was given (*St. Andrassy* v. *Mooney*, 262 N. Y. 368), and it surely was not shown here that permission to use the car on this particular trip had not been given.

Plaintiff's case does not rest solely upon ownership of the car by the defendant employer. White was also the agent and employee of the owner. The owner had given him complete possession and control of the car, coupled with its consent to operate it at all times both day and night, week days and Sundays. This northern trip was on company business and White's hours of employment and use of the car unlimited. To all intents and purposes he was, while on this trip, furthering his employer's interests from the time he left home until he returned. If he converted the car to his own uses he was guilty of larceny and we must presume the contrary. Here was proof far beyond mere ownership alone and with little evidence to contradict it. The charge fairly submitted the question of consent to the jury which made a finding against the appellant insurance company. The verdict should not be disturbed and least of all may it properly be said that there was not even a question of fact in the case.

Motion made by the defendant, The Employers' Liability Assurance Corporation, Ltd., at the end of the case, for the dismissal of the complaint, granted. Order and judgment appealed from reversed, on the law and facts as against The Employers' Liability Assurance Corporation, Ltd., and the complaint dismissed as against it, with costs.

Judgment against Delia F. White, as administratrix, etc., of John T. White, deceased, affirmed, with costs.