WILLIAM APPELT, Plaintiff, v. PETER J. TIMPONE et al., Defendants.

Supreme Court, Special Term, Richmond County, March 17, 1949.

John F. Bowden for plaintiff.

Irving Rivkin for Peter J. Timpone, defendant.

Wm. Martin for Theodore A. Atlas, defendant.

F. E. JOHNSON, J. Defendant, in one notice of motion, seeks to set aside, etc., and obtain a new trial on four grounds; the first and second together relate to a claim of newly discovered evidence, including the alleged misconduct of a juror not known of until after the verdict was rendered; they will be discussed first:

(1) There is no ground for deciding, as charged, that the juror " was biased and incompetent to act as a juror," or for finding that he then knew the plaintiff and the plaintiff's wife, or that there was any " concealment of his knowledge and acquaintance with " them. No unbiased view of the affidavits on that subject would permit any such conclusion as underlies this particular application, and there is a complete failure to prove the alleged ground. If, more properly, it is an application based upon the claim of juror's fraud, the basis of the charge is unfounded. In accordance with the practice carefully followed by this court for many years, the jury was admonished at the close of each trial day not to discuss the case with anyone and to return in the morning; there is no evidence that the juror discussed the case with anyone; there is, on these papers, every reason to believe that he obeyed the direction. That he knew a *witness* is a trivial circumstance, and cannot be the basis of a new trial unless there was a special situation that might have colored his mind thereafter; that situation is not shown here. The supposition that this juror *must* have known somebody, whom he is not shown to have any personal contact with, but whose family he is *supposed* to have known seventeen years ago, must be viewed merely as an effort to get another trial. In *Murphy* v. *16 Abingdon Square Realty Corp.* (243 App. Div. 815) our Appellate Division, after a motion under section 549 of the Civil Practice Act had been denied, and plaintiff moved at Special Term, attacking a juror, made comments not unlike those that could be made here.

(2) The other alleged newly discovered evidence " that the plaintiff committed perjury in his testimony " relates to the

extent of his *physical* disability after he came back from the hospital. Rule 221 of the Rules of Civil Practice requires that this motion must be made on a " settled case "; that is probably not applicable in a nonjury trial, but does apply to jury cases. (*Sachs* v. *Blum,* 241 App. Div. 384; *Swenson* v. *Trowbridge,* 195 App. Div. 310; *Lopez* v. *Margulies,* 246 App. Div. 391; *Matter of Rose,* 153 App. Div. 263, 264; *Cohn* v. *Warschauer Sick Support Soc.,* 19 N. Y. S. 2d 742; *Stoddard* v. *Stoddard,* 37 N. Y. S. 2d 605, citing authorities at p. 607, affd. 264 App. Div. 980; *Boyd* v. *Boyd,* 11 Misc. 357, citing authorities at p. 358.)

Defendant can present no " settled case ", since none has been settled, so rule 221 requires the denial of this part of the motion. However, it is probably the duty of the court to rescue a client, wherever reasonably permissible, from the consequences of his attorney proceeding in disregard of established law and clear rules; the court will therefore, of its own motion, invoke the doctrine of waiver against the plaintiff because there was no *specific objection* made when the motion was heard, the time when fatal objection *could* have been raised. That doctrine requires that one who *has* a remedy that he can choose to use, cannot remain silent and then, by later motion, try to take advantage of what he *could* have done but *would* not do. It has been defined as an implied consent by failure to object, and neglect to insist upon a right at the proper time, or to dispense with something of value. (67 C. J., Waiver, pp. 302–303; *Clark* v. *West,* 193 N. Y. 349, 360; *Chapman* v. *Fowler,* 132 App. Div. 250, 253; *Cowenhoven* v. *Ball,* 118 N. Y. 231, 234; *Schifferdecker* v. *Busch,* 130 Misc. 625, 629.)

This procedure will thus permit considering the merits of the " newly discovered " claim. Mr. Tripp, in his admirable " A Guide to Motion Practice " (1946) says (p. 122) : " It must be shown that the newly discovered evidence was discovered after the trial and could not with all diligence have been discovered prior thereto " (citing *In Re Manning,* 196 App. Div. 586; *Collins* v. *Central,* 229 App. Div. 363) and that it " must be material and ' so positive and convincing, that it will in all probability, produce a different result, if a new trial is had ' "; that cumulative evidence is not of such a character, and that when the new evidence would merely enable a defeated party to impeach credibility a new trial will not be granted (*Corley* v. *New York & Harlem R. R. Co.,* 12 App. Div. 409).

At the trial alert counsel would have noticed that the inability of the plaintiff to do *physical* work was stressed, and not his inability to do *estimating* (which can be done at a desk), and his receipts from *physical* work were given.

It is apparent from the papers that plaintiff, long established in business, was acceptable for the kinds of insurance required in his business, and that the man who was actually doing the work was not equally fortunate, and so was an *associate* or *employee*. If the bill of particulars was not sufficiently definite as to special damage no motion was made to improve it; the latest judicial views on section 288 of the Civil Practice Act might warrant seeking an examination before trial not confined to the matter on which one has the affirmative, since he may examine to anticipate the need of rebuttal (Tripp, A Guide to Motion Practice, pp. 30, 31). A little thought before the trial would have indicated the directions in which information about his alleged inability to *work* might be obtained; the supply houses with which he had been dealing, Social Security records showing who were still his employees, compensation records of his continued insurance, building department's permit bureau, and local gossip in the small settlement in Staten Island in which he lived. It is no reflection to say that privacy of life would not be as easy to maintain there as in larger, more congested areas, where public curiosity about neighbors is less active. In these somewhat isolated settlements, each of which is almost a separate village, it would be difficult to hide both what one was doing, *and what one was not doing*. The meager information presented by defendant to the jury on this subject suggests how little real effort was made to get the information now called " newly discovered " but which, if newly *discovered was not newly discoverable*.

Newly discovered evidence " not material to *the principal issue* " (italics supplied) was ignored in *Beatty* v. *Healy* (248 App. Div. 896), since it " would not be likely to change the result. * * * There must be a finality to litigation." In *Papathanasi* v. *Reiter* (270 App. Div. 308) the " new evidence " was *not as to the main issue* and the motion was denied; held also that the motion rests in the discretion of the trial justice, under *Barrett* v. *Third Ave. R. R. Co.* (45 N. Y. 628) and *Collins* v. *Central Trust Co.* (226 App. Div. 486).

The remaining grounds are either included in the broad motion made under section 549 and denied, after the jury was polled, or should have been so included. Wait says (8 Wait on New

York Practice, p. 113) that after the motion under section 549 is made after the verdict, it may not be renewed at Special Term, and that the remedy is appeal; careful search discloses no contrary holding. If this motion is also under subdivision 3 of section 457-a of the Civil Practice Act, relative to the refusal to direct, it is an unauthorized renewal of the same motion denied at the trial or one now having no sound legal foundation.

In *Jacquin* v. *Syracuse Auto Rental & Taxicab Corp.* (263 N. Y. 53) the court having directed a verdict, plaintiff at once moved to set it aside on all the usual grounds (p. 55); it was denied and later he moved at Special Term, before the same justice, to vacate the judgment and enter a different one because of the court's trial error on the law; the Court of Appeals held he should appeal from the original refusal to set aside, but could not later move in Special Term (citing decisions).

It may, however, be proper to state why, if they could be considered, the additional motion grounds are legally unsound.

(A) A jury that has not agreed cannot render a *verdict;* the report of the foreman to the court upon their return that they have not agreed is not a *verdict.* When they were sent out the previous day to deliberate and resume their seats the next morning, and a direction for a sealed verdict was *later* duly made, this presupposes that there would be a *verdict,* so the usual written form of *it* was later prepared with the usual sealed envelope. If no *verdict* was agreed upon they could not sign *that* form, and it thereafter ceased to have any meaning. (The recent complaints of defendant's attorney having resulted in the clerk rescuing the now impounded torn scraps of that paper from a wastebasket still does not give it meaning.) The procedure of the clerk, and the officer in charge of the jury, was entirely correct, and when the jury, pursuant to such directions, returned to their seats in the jury box the next morning, no possible criticism existed as to what had been done up to that point; if they *had* then presented any writing stating their failure to agree it would have been refused; their presence in the jury box made it proper only for the foreman to be orally interrogated as to whether or not they had reached a *verdict.* When they had no *verdict* to report, that paper became useless.

(B) The proceedings taken thereafter in the courtroom were not only not objected to by defendant's counsel but *were participated in by him;* even after the jury had returned to the jury room for further deliberation no protest was made; when, later, they asked that the charge be reread, this was done; not only was

no objection made but that counsel insisted on also reading something that had been said after the charge, and probably amounted to an additional charge; the jury then retired again; no objection was thereafter raised to any step in the procedure; the jury reported agreement and when they were brought in the foreman duly stated the verdict to be in favor of the plaintiff; when they were polled *on demand of the defendant's attorney* only one dissented from the verdict reported; no objection was made about the procedure; a motion for a new trial on the usual grounds was then made and was argued at length by the attorney, *without any reference whatever to any alleged* irregularity of any step in the procedure; upon its completion the court sought to outline points which counsel should brief; he interrupted to say that he would not file a brief; thereupon the motion was denied; the jury having left the box, other court business was taken up; thereupon he made mention of a stay, but his opponent was absent and the court refused to consider it. Upon a mere statement of these facts, borne out by the stenographic record, it is obvious defendant is in no position to make any complaint about procedure.

The truth undoubtedly is that how the jury stood was a well-kept secret, and his acquiescence in sending them back was based upon a belief, born of his opinion of his conduct of the trial and the summing up, that the nine votes were for the defendant; his ready acquiescence in all further proceedings is understandable *only* on that view and wholly inexplicable *if he thought the nine votes were against him*; he must have been completely upset when they came back eleven to one for the plaintiff, since it did not occur to him to ask for a stay until it was too late to do so.

The failure to object on these many occasions was a waiver which cannot now be ignored (*Russell* v. *Randall,* 123 N. Y. 436); as said in *Weaver* v. *Scripture* (125 Misc. 741, 746, affd. 214 App. Div. 852) one cannot, *without making his objection when he could,* " take his chances of a favorable verdict, and then, if disappointed in the result, be granted a new trial. [Citations.] "

The desire to try a case a second time is the reaction of every lawyer who did not win the first time, but our system does not grant new trials on that basis; in the present calendar situation it is as much as we can do to grant a party his " day " in court, and when he has had plenty of time to prepare for that day he must see to it that all that he has to say, or present, is ready on that occasion. In the absence of any sound legal reason why

there should be another trial, there is abundant authority against a trial justice being able to grant one in this case.

There was undoubtedly the clearest kind of an issue of fact as to negligence and the gauze; a medical expert supported the plaintiff; when the family physician, several days after the incision had been sewed, was called, late at night, because a second eruption of pus produced panic in the patient and his wife, did he on that occasion draw this gauze out from the interior? The patient, the wife and two witnesses said " yes "; *only the family physician said " no "*. Was it left in the cavity when the sewing was finished? They said it must have been, else how could it have been thus taken out? The defendant and his assistants at the operation said it could not have been, and was not left there, *but who professed to have looked inside to see if, in fact, it was there before the sewing began?*

(C) A defendants' verdict could not have been directed because there were issues of fact as to medical negligence. The *Blackburn* v. *Baker* ruling (256 N. Y. 540) merely affirmed the holding (231 App. Div. 769) that on the *second* trial the trial court properly directed a verdict.

After the *first* trial no cause of action for negligence was shown; the Appellate Division apparently granted a second trial because proof that was missing was possibly obtainable; but at the second trial the record of *the first trial was then stipulated*; that record showed no cause of action, so the second trial properly ended in a direction. The interesting factual situation is disclosed in the reversal opinion after the *first* trial (227 App. Div. 588; see summary in first paragraph of opinion). Plaintiff (*suing on a res ipsa loquitur theory*) had then offered *no expert testimony as to whether the physician's described procedure was bad medical practice*. The defendant not only had testified fully to his acts of care but had called an *expert* who said that what defendant had so testified to were *proper and approved medical methods, etc.*, and that there was no negligence therein; he justified all that defendant did. Thereupon (as always in *res ipsa loquitur* cases), the duty " to go forward with the evidence " returned to the plaintiff, but the " Plaintiff did not rebut defendant's medical evidence that proper and approved methods were used * * * [and] when defendant's expert witness stated that proper and approved methods were used in the operation, the possible inference of negligence because the pack-off had been left in the abdomen was destroyed." (227 App. Div. 588, 590, *supra*.)

There being no factual contradiction of what defendant *said* he had done, and *why* he had done it, and there being medical *approval* by a competent witness *in support of his procedure,* plaintiff's first case could not go to the jury, because plaintiff *failed to go forward, by a medical expert, to contradict the claim of approved medical practice, and to testify that the medical procedure was not standard,* thereby creating a medical issue of fact. Apparently, the plaintiff could do no better on the second trial (lacking that vital medical witness) and so had to stipulate the first trial record; the verdict that should have been directed on the first trial was directed on the second, and was affirmed. There is obviously no analogy between that case and the present one; here plaintiff, *not suing on a res ipsa* claim, *gave proper medical proof of the defendant's departure from standard practice,* creating thereby the *medical negligence* issue which had to go to the jury. *It will be noted how important in the Blackburn case (supra) was the proof of defendants' manual examination of the interior before sewing began.*

(D) The motion is not, in terms, for a stay, but since on the argument an oral application for one was made, it will be considered; no previous application had been made; the casual remark, in the absence of his adversary, long after the verdict had been rendered, was not officially noticed by the court; upon the hearing of this motion, sixty days to make a case was granted; upon the objection of the plaintiff, a thirty-day stay was denied. A lesser stay was not granted, because although the judgment by that time had been of record for a few weeks, all defendant had done was to file a bond *on which he, himself, was one of his own sureties;* that extraordinary procedure has no basis in the Civil Practice Act, and must be completely ignored on an application for a stay.

(E) A stenographic record having been made of all proceedings on the hearing of this motion, the clerk's statement on the subject of the unused and torn-up verdict form, made at that time in the presence of both counsel, will be attached hereto; everything done in connection with that verdict form was proper and there is not the slightest legitimate criticism against anyone who had anything to do with it, despite charges in the moving affidavit.

Motion denied; settle order on notice.