*421 OPINION OF THE COURT
Walter J. Relihan, Jr., J.
I. The Facts
This is a motion by the defendant anesthesiologist, Dr. Mintz, for summary judgment dismissing the medical malpractice complaint of Kathleen and Dennis States.
Surgery was performed upon Kathleen States on July 25, 1995 for the removal of an ovarian cyst. The operation was completed successfully. The action against the surgeon and the hospital has been discontinued or dismissed on consent.
During the surgery, the plaintiffs right arm was extended outward from the operating table upon an arm board at an angle described as “less than 90 degrees” (Mintz deposition, at 58). The dorsal surface of her hand was the site of the intravenous tube used to introduce the anesthetic. It is not disputed that “with prolonged stretching you can get either muscle or nerve damage or complications,” including injury to the brachial plexus (ibid,, at 59), and that the mechanics of the operation were such that, conceivably, the injury could have been produced in the course of that procedure. However, none of the participants have any present recollection of any untoward event which occurred at the time. None of the medical records disclose any such event.
The plaintiff alleges that, in fact, prolonged extension or hyperabduction or other lack of care for the arm was the cause of her brachial plexus traction injury which has produced a painful and permanent disability affecting her right upper arm. Four medical expert witnesses, Drs. Kane, Beger, Tahmoush and Togut, assert that plaintiff suffered an injury diagnosed as a right thoracic outlet syndrome (the brachial plexus traction injury) and a reflex sympathetic dystrophy (RSD). They agree that the injury occurred in the course of the July 25, 1995 surgery.
Dr. Kane, an anesthesiologist, states that “brachial plexus injuries do not occur during this type of procedure without a deviation from the standard of medical care. To a reasonable degree of medical certainty, I feel the * * * [injuries] * * * are the direct result of the failure of the [anesthesiologist] to maintain and protect the position of her right arm during the [surgery] * * * The anesthesiologist and the CRNA [assisting nurse] were in a position to see her right upper extremity and had the responsibility to protect it and her from harm.”
Dr. Beger, an obstetrics and gynecology specialist, has *422 performed over 1,200 ovarian cystectomies “without ever having a patient sustain a brachioplexus traction injury.” He repeats the Kane findings and opinion that the injury could not occur in the absence of negligence. He adds that the anesthesiologist, not the surgeon, had the responsibility to observe plaintiff’s right extremity during the procedure and the duty to protect the arm from harm, including a brachioplexus traction injury.
Dr. Tamoush, a neurologist, has had extensive experience with RSD and the thoracic outlet syndrome and has treated plaintiff since 1996. He agrees that plaintiff suffered this type of injury and that it occurred during the course of the July 25, 1995. surgery. Tamoush consulted with Dr. Togut, a surgeon with special experience treating such cases, regarding plaintiff’s injury and treatment. Togut states: “It is my opinion with a reasonable degree of medical certainty that [plaintiff] suffers from right thoracic outlet syndrome and reflex sympathetic dystrophy which was caused by hyperabduction of her right arm during the surgical procedure of July 25, 1995.”
Dr. Burdick, a neurologist retained by defendant, examined plaintiff in January 2001 and found no evidence of RSD, thoracic outlet syndrome, brachial plexus injury or any other neurological problem relating to plaintiffs right shoulder and, after reviewing the hospital and other related records, opines that no departure from accepted standards of care could be attributed to Dr. Mintz.
Counsel for defendant, noting the conceded fact that there is no evidence of any unusual event in the operating room, much less that any negligent act or omission by the anesthesiologist occurred, argues that the res ipsa loquitur doctrine is unavailable to the jury since the injury was not self-evidently the result of some medical misdeed.
II. The Law
There is no direct evidence that plaintiff’s arm was hyperabducted (i.e., moved to a greater than 90-degree angle from her body) or was otherwise stretched or bumped or that her shoulder girdle area was compressed while her body was tilted downward toward her head in the Trendelenburg position during the surgery. Hence, no cause and effect relation between Dr. Mintz’s conduct and the injury can be established except upon assumptions which require the intervention of expert opinion evidence.
The opinions of plaintiff’s experts are dependent upon the knowledge and skill derived from highly specialized profes *423 sional experience and training. The Court of Appeals has recognized that “[l]ong observation and actual experience” with a malady is a qualification for the admission of opinions by practicing physicians regarding the causes of the condition (Meiselman v Crown Hgts. Hosp., 285 NY 389, 398).
Many courts insist that a general acceptance of a scientific theory or application by scientists in the particular field of study is essential, relying on Frye v United States (293 F 1013), which has been adopted and followed in New York and many other jurisdictions. Here, there is no showing of a consensus of opinion in the medical profession regarding this injury or its causes. However, the Frye rule has no bearing where practical experience is the pertinent qualification and the proffered experts can demonstrate a reliable “fit” between their actual experience and the opinion to be rendered (cf., Meiselman, supra; Price v New York City Hous. Auth., 92 NY2d 553; and compare Daubert v Merrell Dow Pharms., 509 US 579, and Fed Rules Evid rule 702). Based on their respective vitae, it is apparent that plaintiffs experts are well qualified to offer such opinions.
The res ipsa loquitur doctrine, classically, is used in medical malpractice cases when the procedure is patently the cause of the injury and the connection between cause and effect requires nothing but the application of common experience and rudimentary logic. A familiar example may be found in Prooth v Wallsh (105 Misc 2d 608 [surgical clamp left in chest]). But where the injury, though eoncededly sustained in the course of a medical or surgical procedure, falls within the range of consequences which the exercise of ordinary skill cannot always prevent, common sense and ordinary experience will not permit a jury to infer negligence from the mere happening of the injury (Schoch v Dougherty, 122 AD2d 467).
The facts, in this case, do not speak for themselves. Knowledge of the precipitating cause requires expert opinion evidence. Let us assume the jury wishes to accept the Kane/ Beger/Togut position, though the rationale upon which their opinions rest may be incomprehensible to ordinary knowledge and experience. Based on the opinions, may the jury then make the inference that the palpable effect could not have occurred in the absence of the impalpable cause identified by the experts? In short, where the premise is not self-evident, is the res ipsa loquitur rule ever available in a medical malpractice case?
The answer is not free from doubt. A division of opinion exists among the states and even within our own intermediate appellate courts: Compare Ceresa v Karakousis (210 AD2d 884) *424 in the Fourth Department, holding that res ipsa is available, with Stanski v Ezersky (228 AD2d 311), in the First Department, which excludes the use of res ipsa where the jury, unaided by experts, would not be qualified to infer negligence from the mere happening of the injury. Our highest Court has yet to speak on the point. Accordingly, we must steer a course with few stars to guide us.
It is not necessary to accept the current validity of the entire ratio decidendi employed by the Court of Appeals in Dougherty v Milliken (163 NY 527), to agree that a class of cases exists “in which the conclusions to be drawn from the facts stated, as well as knowledge of the facts themselves [i.e., the occurrence of hyperextension or some other precipitating mechanism], depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence. In such cases not only the [precipitating] facts, but the conclusion to which they lead, may be testified to by qualified experts.” (163 NY at 533.)
Ceresa v Karakousis (210 AD2d 884) is instructive. Plaintiff had sustained a highly unusual shoulder injury during the course of a protracted surgery upon his lower spine. Ceresa’s medical expert gave testimony that the injury occurred in the course of the surgery and opined that the cause was the negligent manner in which the plaintiff was positioned for this nine-hour operation.
The Ceresa court, citing and distinguishing the result in Pipers v Rosenow (39 AD2d 240), noted with approval that the Pipers Bench had concluded, in an obiter dictum, that the foundation for a res ipsa loquitur charge could have been established if plaintiff had presented expert evidence that the injury would not have occurred without negligence (210 AD2d at 885). Such evidence had been presented by Ceresa at trial. Consequently, the Ceresa court, in agreement with the Pipers dictum, held that (at 885): “the jury should have been instructed on res ipsa loquitur as an alternate theory of liability (see, Fogal v Genesee Hosp. [41 AD2d 468], 477).”
Leone v United Health Servs. (282 AD2d 860) is not to the contrary. There, a plaintiff opposed the defendant surgeon’s motion for summary judgment by relying solely upon the res ipsa loquitur doctrine to sustain his cause of action. The defendant had performed a vasectomy upon plaintiff. It was eventually discovered that the left genitofemoral nerve had been injured. The court held that expert testimony was required to establish that the injury would not have occurred in the *425 absence of negligence. No such expert opinion was produced and, consequently, the complaint was dismissed. Here, of course, the plaintiffs have produced the very opinion evidence which was lacking in Leone.
Finally, we note that the Court of Appeals encountered the issue in Kambat v St. Francis Hosp. (89 NY2d 489) but no resolution of the issue was found necessary. A footnote (at 495-496, n) states that “The modern trend tends toward allowance of experts to ‘ “bridge the gap” between the jury’s common knowledge and the uncommon knowledge of experts’ by testifying in medical malpractice cases as to what is common knowledge within their specialized fields ([citing cases]; see also Restatement [Second] of Torts § 328 D, comment d [expert testimony that such an event usually does not occur without negligence may afford a sufficient basis for the necessary inference]; Prosser and Keeton, Torts §§ 39, 40, at 247, 256-257 [5th ed] [same]).” The footnote takes no position and dispassionately discusses the contrasting views expressed in other jurisdictions, and by our own lower courts. However, the intimation is clear that the “modern view” will get careful and sympathetic attention should the question reach the Court of Appeals.
It is well settled that an expert, qualified by training, observation and experience, may opine that an unwitnessed cause must have been present in order to explain a subsequent effect (McCullock v Fuller Co., 61 F3d 1038, 1043 [2d Cir 1995]). Juries are regularly presented with such testimony. It defies the fundaments of logic to suggest that, armed with such testimony, a jury may not make an inference from such a premise to a reasoned conclusion. Moreover, it ignores the reality that courts and juries must often rely upon “a commonsense appraisal of the probative value of circumstantial evidence. [The doctrine of res ipsa loquitur] requires evidence which shows at least probability that a particular accident could not have occurred without legal wrong by the defendant * * * In the administration of the law we must be satisfied with proof which leads to a conclusion with probable certainty where absolute certainty is impossible.” (George Foltis, Inc. v City of New York, 287 NY 108, 115.) Needless to add, the jury is free to accept or reject the invitation to infer negligence from the fact of the injury and the burden remains with the plaintiff to prove the defendant’s negligence by a preponderance of the credible evidence.
To conclude, we agree with the position stated at section 328 D, comment d, of the Restatement (Second) of Torts, and *426 the modern trend of the law of evidence, that expert opinion testimony is available to establish a premise, not within the realm of common knowledge or experience, which would permit a jury to make a res ipsa loquitur inference from that premise to the conclusion that the plaintiffs injury would not have occurred in the absence of the defendant’s negligence.
The defendant’s motion for summary judgment dismissing the complaint is denied.